1    LYNNE C. HERMLE (STATE BAR NO. 99779)
     lchermle@orrick.com
2    JOSEPH C. LIBURT (STATE BAR NO. 155507)
     jliburt@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
4    Menlo Park, California  94025
     Telephone:     +1-650-614-7400
5    Facsimile:     +1-650-614-7401

6    Attorneys for Defendant
     Microsoft Corporation
7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12   MAHMOUD KEDKAD,                          Case No. 3:13-cv-00141-EDL

13                   Plaintiff,               **DEFENDANT MICROSOFT
                                              CORPORATION'S NOTICE OF
14          v.                                MOTION AND MOTION TO DISMISS
                                              THE COMPLAINT; MEMORANDUM
15   MICROSOFT CORPORATION, INC., et al.,     OF POINTS AND AUTHORITIES IN
                                              SUPPORT THEREOF**
16                   Defendants.
                                              Date:  May 14, 2013
17                                            Time:  9:00 a.m.
                                              Place:  Courtroom E, 15th Floor, SF
18                                            Judge:  Hon. Elizabeth D. Laporte

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

III. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A. The Parties ............................................................................................... 2

    B. Plaintiff's Employment with MS Libya .................................................. 3

    C. The Libyan Judicial System and Labor and Employment Law .............. 4

    D. The Burdens Associated with Litigating in this District ........................ 5

IV. ARGUMENT ..................................................................................................... 6

    A. Plaintiff's Complaint Should Be Dismissed for Improper Venue Under
       Federal Rule of Civil Procedure 12(b)(3) ............................................... 6

    B. In the Alternative, Plaintiff's Complaint Should Be Dismissed Under the
       Doctrine of *Forum Non Conveniens* ...................................................... 9

        1. Plaintiff's Choice of Forum is Entitled to Lesser Deference ...................... 9

        2. Libya Is an Adequate Alternative Forum .................................................... 10

        3. The Choice-of-Law Analysis Favors Libyan Law ..................................... 11

        4. The Public Interest Factors Favor Dismissal ............................................. 12

        5. The Private Interest Factors Favor Dismissal ............................................ 14

V. CONCLUSION ................................................................................................... 15

- i -

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
  331 F. Supp. 2d 1176 (C.D. Cal. 2004)................................................................. 13

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996)........................................................................... 6

*Cascade Promotion Corp. v. AMA Sys., LLC*,
  No. C 07-1513 CW, 2007 WL 1574544 (N.D. Cal. May 30, 2007)......................... 7

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983)......................................................................... 9

*Farhang v. Indian Inst. of Tech.*,
  C-08-02658 RMW, 2012 WL 113739 (N.D. Cal. Jan. 12, 2012).......................... 9

*Fontaine v. Washington Mut. Bank, Inc.*,
  No. CV 08-5659 PSG (Ex), 2009 WL 1202886 (C.D. Cal. Apr. 30, 2009) .......................... 10

*Garrel v. NYLCare Health Care Plans, Inc.*,
  No. 98 Civ. 9077 (BSJ), 1999 WL 459925 (S.D.N.Y. June 29, 1999)........................... 10, 14

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ................................................................................. 9

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
  583 F.3d 656 (9th Cir. 2009).................................................................... 9, 11

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001)................................................................. passim

*M/S Bremen v. Zapata Off-shore Co.*,
  407 U.S. 1 (1972) ................................................................................. 1, 6

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988)................................................................. 6, 7, 8

*Marinechance Shipping, Ltd. v. Sebastian*,
  143 F.3d 216 (9th Cir. 1998)................................................................. 7

*McGhee v. Arabian Am. Oil Co.*,
  871 F.2d 1412 (9th Cir. 1989)................................................................. 12

*Middleburg Training Ctr., Inc. v. Firestone*,
  477 F. Supp. 2d 719 (E.D. Va. 2007)........................................................ 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　　473 U.S. 614 (1985) ............................................................................................. 8

*Murphy v. Schneider Nat'l, Inc.*,
　　362 F.3d 1133 (9th Cir. 2003)............................................................................... 6

*Pereira v. Utah Transp., Inc.*,
　　764 F.2d 686 (9th Cir. 1985)............................................................................... 10

*Piper Aircraft v. Reyno*,
　　454 U.S. 235 (1981) ................................................................................. 10, 11, 13

*Price v. Bell & Howell Phillipsburg Co.*,
　　Civ. No. 92-208 (CSF), 1991 WL 88090 (D.N.J. Apr. 6, 1992) ........................ 10

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
　　969 F.2d 953 (10th Cir. 1992) .............................................................................. 8

*Sarmiento v. BMG Entm't*,
　　326 F. Supp. 2d 1108 (C.D. Cal. 2003)................................................................. 8

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*,
　　930 F.2d 777 (9th Cir. 1991)............................................................................... 11

*Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*,
　　926 F.2d 865 (9th Cir. 1991)......................................................................... 6, 7, 8

*Std. Bank PLC v. Vero Ins. Ltd.*,
　　No. 08-cv-2127-PAB-BNB, 2009 WL 458680 (D. Colo. Feb. 24, 2009), *vacated on other
　　grounds*, No. 08-cv-212-PAB-KLM, 2009 WL 4730474 (D. Colo. Dec. 7, 2009) .......... 10, 11

*VFD Consulting, Inc. v. 21st Servs.*,
　　425 F. Supp. 2d 1037 (N.D. Cal. 2006) .............................................................. 12

**Federal Statutes**

29 U.S.C. § 2615 *et seq.* ............................................................................................... 1

42 U.S.C. § 12101 *et seq.* ............................................................................................. 1

**State Statutes**

Cal. Gov't Code Ann. § 12900 *et seq.* ....................................................................... 1

Cal. Gov't Code Ann. § 12945.1 *et seq.* .................................................................... 1

**Rules**

Fed. R. Civ. P. 4(d) ..................................................................................................... 2

FED. R. CIV. P. 4(m) ............................................................................................ 2

FED. R. CIV. P. 12(b)(3)............................................................................... 1, 6, 9

FED. R. CIV. P. 45(c)(3)(a)(ii)................................................................................ 15

**Other Authorities**

Restatement (Second) of Conflicts of Laws § 145 ......................................... 12

Restatement (Second) of Conflicts of Laws § 187 ......................................... 11

Restatement (Second) of Conflicts of Laws § 188 ......................................... 12

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on May 14, 2013, at 9:00 a.m., or as soon thereafter as the

4  matter may be heard, in Courtroom E, 15th Floor, of the United States Courthouse, 450 Golden

5  Gate Avenue, San Francisco, Defendant Microsoft Corporation shall and hereby does move this

6  Court for an order dismissing Plaintiff Mahmoud Kedkad's Complaint (ECF No. 1) for improper

7  venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, under the doctrine of

8  *forum non conveniens.*

9      The Motion is based upon this Notice of Motion, Motion, and Memorandum of Points and

10  Authorities, the accompanying Declarations of Khaled Aljazwi, Khalid Elhasumi, and Ben

11  Orndorff, the arguments of counsel, and the record as a whole.

12      PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil

13  Procedure 44.1, resolution of Defendant Microsoft Corporation's Motion to Dismiss the

14  Complaint may involve issues of foreign law.

15

16  Dated: March 29, 2013                    ORRICK, HERRINGTON & SUTCLIFFE LLP,

17

18                                         By: _____ /s/ Joseph C. Liburt _____
                                                LYNNE C. HERMLE
19                                              JOSEPH C. LIBURT
                                                Attorneys for Defendant
20                                              Microsoft Corporation

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]

**MEMORANDUM OF POINTS AND AUTHORITIES**

"We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."

— Chief Justice Warren E. Burger, *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 9 (1972).

## I.      INTRODUCTION

Plaintiff Mahmoud Kedkad brings this employment action against Defendants Microsoft Corporation ("MS Corporation"), Microsoft Libya ("MS Libya"), EMEA, and NEPA, asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2615 *et seq.*, the California Fair Employment and Housing Act, CAL. GOV'T CODE ANN. § 12900 *et seq.*, the California Family Rights Act, CAL. GOV'T CODE ANN. § 12945.1 *et seq.*, and the common law.  Distilled to its essence, this action presents a dispute arising out of Plaintiff's employment in Libya by MS Libya, the Libyan entity that employed Plaintiff at all times relevant to the Complaint.  As part of his employment, Plaintiff was required to live in Libya, reported exclusively to his superiors there, and in his employment contract he agreed to submit any future claims to the <u>mandatory</u> and <u>exclusive</u> adjudicative process for labor and employment disputes in Libya.  In short, the circumstances of Plaintiff's employment gave rise to the reasonable expectation that any litigation arising from his employment would be litigated in Libya before the Libyan courts.  Accordingly, MS Corporation respectfully submits that Plaintiff's Complaint should be dismissed in its entirety for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, under the doctrine of *forum non conveniens*.

## II.     STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1.      Whether Plaintiff is required to litigate this action in Libya before the Libyan courts based on the mandatory and exclusive adjudicative process required for labor and employment disputes under Libyan law, which was expressly

incorporated into Plaintiff's employment contract; and

2.     Whether this Court should exercise its discretion to dismiss this action under the doctrine of *forum non conveniens* because litigation in Libya would be more convenient for the parties.

## III.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.    <u>The Parties</u>

Plaintiff commenced this action in the Northern District of California on January 10, 2013, naming as defendants MS Corporation, MS Libya, EMEA, and NEPA. (*See* Compl. for Damages & Equitable Relief ("Compl."), ECF No. 1.) On January 21, 2013, MS Corporation agreed to waive service of process pursuant to Federal Rule of Civil Procedure 4(d). To date, Plaintiff has not filed proof of service as to any of the three remaining defendants: MS Libya, EMEA, and NEPA.[1]

Plaintiff is a Libyan national and a naturalized citizen of the United States currently residing in Redwood Shores, California. (*Id.* ¶¶ 3, 13.) MS Corporation is a Washington corporation with its principal place of business in Redmond, Washington. (Decl. of Ben Orndorff in Supp. of Def. Microsoft Corporation's Mot. to Dismiss ("Orndorff Decl.") ¶ 2.) MS Libya is, and always has been, a separate and distinct legal entity from MS Corporation. (*Id.*) Until early 2010, MS Libya was a Representative Office with a separate legal personhood registered with the Libyan Ministry of Economy. (*Id.*) In early 2010, the Representative Office was closed and MS Libya was reorganized as a Branch Office of Microsoft Morocco ("MS Morocco"), an entirely separate legal entity incorporated in Morocco with its principal place of business in Casablanca, Morocco. (*Id.*) Neither MS Libya nor MS Morocco is or ever has been a "branch" of MS Corporation.

---

[1] To the extent Plaintiff intends to attempt service of process on the remaining defendants in the United States, he must do so before May 10, 2013 or risk mandatory dismissal. *See* FED. R. CIV. P. 4(m). Upon information and belief, EMEA and NEPA are not legal entities capable of being sued.

**B.**     <u>**Plaintiff's Employment With MS Libya**</u>

At all times relevant to the Complaint, Plaintiff was employed by MS Libya, and MS Libya alone. (Decl. of Khalid Elhasumi in Supp. of Def. Microsoft Corporation's Mot. to Dismiss ("Elhasumi Decl.") ¶¶ 6, 12.) Plaintiff was hired by MS Libya to serve as a Marketing Lead in its office in Tripoli, Libya. (Compl. ¶ 9.) Plaintiff's job responsibilities required him to live and work in Libya, where he reported exclusively to MS Libya management. (Compl. ¶¶ 9-10; Elhasumi Decl. ¶ 11.)

Plaintiff alleges that he entered into two employment contracts concerning his employment in Libya. (Compl. ¶ 9.) Plaintiff's first employment contract purported to cover the period from February 2, 2010 through February 1, 2011 (the "2010 Contract"). (Elhasumi Decl. ¶ 4 & Ex. A (2010 Contract), art. 2.) However, when MS Libya was reorganized as a Branch Office in 2010, Plaintiff and MS Libya entered into a superseding contract purporting to cover the period from January 1, 2011 to January 1, 2012 (the "2011 Contract"). (Orndorff Decl. ¶ 2; Elhasumi Decl. ¶ 4 & Ex. C (2011 Contract – English Translation), art. 1.) By their terms, both contracts were between Plaintiff and MS Libya, and no other entity. (Elhasumi Decl. ¶ 5, Ex. A (2010 Contract) at 1 & Ex. C (2011 Contract – English Translation) at 2.) The contracts expressly provide that the location of Plaintiff's employment would be Tripoli, Libya; Plaintiff's salary would be subject to the withholdings required by Libyan law; Plaintiff would be eligible to participate in MS Libya's local benefit programs; and Plaintiff's leave and the other terms and conditions of employment would be subject to Libyan labor and employment law. (*Id.* ¶ 5, Ex. A (2010 Contract), arts. 3, 5, 8-9, 14 & Ex. C (2011 Contract – English Translation), arts. 4, 8, 10 & annex 1-2.)

Plaintiff's 2011 Contract includes the following provision:

> <u>**Article 10**</u>
>
> This Contract is subject to the provisions of the Labor Law No. (58) for the year 1970 Gregorian and its amendments and the law on Social Solidarity No. (13) for the year 1980 Gregorian and its amendments and all other decision[s], decree[s] or regulation[s]

1   which have not been specifically mentioned in this contract.

2   (*Id.*, Ex. C (2011 Contract – English Translation), art. 10.)  By its terms, the contract is subject to,

3   and incorporates all the provisions of, the applicable Libyan Labor Law.  (Decl. of Khaled

4   Aljazwi in Supp. of Def. Microsoft Corporation's Mot. to Dismiss ("Aljazwi Decl.") ¶ 8.)  Under

5   the Libyan Labor Law, all labor and employment disputes are subject to a <u>mandatory</u> and

6   <u>exclusive</u> conciliation, arbitration, and litigation process.  (*Id.* ¶ 9 & Ex. B (Labor Law No. 12 of

7   2010) §§ 101-09.)  This mandatory and exclusive process is consciously designed to afford

8   employees working in Libya sufficient protections against harm in the workplace and to protect

9   the Libyan government's sovereign interest in policing and monitoring employment relationships

10  within its borders.  (*Id.* ¶¶ 5-6, 9.)  Therefore, like all employees and companies working in Libya

11  during the relevant time period, Plaintiff and his employer agreed to litigate any and all disputes

12  relating to Plaintiff's employment in Libya before the Libyan courts and tribunals.  (*Id.* ¶ 11.)

13      The Libyan revolution, which began in earnest in February 2011, resulted in the closure

14  of MS Libya.  (Elhasumi Decl. ¶ 8.)  Plaintiff and other MS Libya employees were evacuated

15  from the country for their safety and protection.  (*Id.*)  Following his evacuation, Plaintiff was still

16  paid his ordinary salary for approximately nine months.  (*Id.* ¶ 9.)  During this nine-month period,

17  Plaintiff did not perform any work on behalf of MS Libya or, for that matter, any other Microsoft

18  entity.  (*Id.*)  Indeed, MS Libya's office remained closed through and beyond Plaintiff's

19  termination on December 1, 2011.  (*Id.*)

20      When MS Libya reopened in April 2012, it was under changed circumstances.  (*Id.* ¶ 10.)

21  All Marketing Lead roles in the region were eliminated, including the Marketing Lead role within

22  MS Libya, rendering Mr. Kedkad's former role unnecessary.  (*Id.*)

23  **C.      <u>The Libyan Judicial System and Labor and Employment Law</u>**

24      The Libyan judicial system is an independent judicial system that operates according to

25  the rule of law.  (Aljazwi Decl. ¶ 3.)  Litigants in Libyan courts and tribunals have the ability to

26  seek discovery of relevant evidence and testimony and to introduce relevant evidence and

27  testimony at a hearing of trial, and disputes are heard and decided by a neutral decision-maker in

28  a timely manner.  (*Id.*)  All decisions are generally set forth in writing and accompanied by a

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-CV-00141-EDL]

1  statement of the reasons supporting the decision.  (*Id.*)  In most instances, litigants may seek

2  further review of an adverse decision before an appellate tribunal.  (*Id.*)

3  Plaintiff is a Libyan national.  (Compl. ¶ 3.)  Nonetheless, even non-resident and non-

4  citizen plaintiffs may institute legal proceedings in the Libyan courts.  (Aljazwi Decl. ¶ 4.)

5  Simply put, Plaintiff would be able to bring suit in Libya, retain experienced counsel, and utilize

6  the Libyan judicial system just as if he were a resident of Libya.  (*Id.*)

7  In addition to having an established judicial system, Libya has developed a comprehensive

8  legal regime governing labor and employment disputes that includes substantial, and meaningful,

9  protections for employees and leaves little room for employer deviation from government-

10  mandated norms.  (*Id.* ¶ 6.)  Plaintiff's claims in this action would cognizable, in all or in part,

11  under Libyan law, including the Labor Law No. 12 of 2010.  (*Id.* ¶¶ 12-15.)

12  **D.      The Burdens Associated With Litigating in This District**

13  Plaintiff's direct supervisor, co-workers, and the individuals who engaged with him in a

14  human resources capacity are all located either in Tripoli, Libya or elsewhere in the North Africa

15  and Middle East region.  (Elhasumi Decl. ¶¶ 3, 6-7.)  None is located in the United States, let

16  alone this District.  (*Id.* ¶ 6.)  The time, distance, and cost required to travel to this District from

17  the North Africa and Middle East region would be substantial.  (*Id.* ¶ 13.)  It can take as long as

18  thirty-nine hours to travel from Tripoli to San Francisco and a round-trip business-class ticket

19  typically costs more than $11,000.  (*Id.*)  Therefore, requiring the individuals who supervised and

20  worked with Plaintiff or who engaged with Plaintiff in a human resources capacity to travel to

21  this District to provide testimony would result in considerable burden and expense and be

22  significantly disruptive to ordinary business operations.  (*Id.*)

23  Some MS Libya personnel and employment records, including documents relating to

24  Plaintiff's employment with MS Libya, are in Arabic.  (*Id.* ¶ 15.)

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]

1  IV.   **ARGUMENT**

2      A.      **Plaintiff's Complaint Should Be Dismissed for Improper Venue Under**

3              **Federal Rule of Civil Procedure 12(b)(3)**

4          A motion to dismiss based upon a forum selection agreement is treated as a motion for

5  improper venue under Federal Rule of Civil Procedure 12(b)(3).[2]  *Argueta v. Banco Mexicano,*

6  *S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).   In this context, the district court "must draw all

7  reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of

8  the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003).

9  However, "the pleadings are not accepted as true" and the district court is permitted "to consider

10  facts outside the pleadings." *Argueta*, 87 F.3d at 324.   Ultimately, the decision of whether or not

11  to enforce a forum selection agreement is entrusted to the district court's sound discretion.

12  *Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 867 (9th Cir. 1991).

13          Federal common law governs the interpretation and enforcement of forum selection

14  clauses.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).   Under

15  federal law, a forum selection agreement is "prima facie valid and should be enforced unless

16  enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

17  *Bremen*, 407 U.S. at 10.   This exception has been "narrowly" construed, *Argueta*, 87 F.3d at 325,

18  and the party opposing a forum selection agreement "bears a 'heavy burden of proof' and must

19  'clearly show that enforcement would unreasonable and unjust, or that the clause was invalid for

20  such reasons as fraud or over-reaching.'"  *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S.

21  at 15).

22          In this case, Plaintiff's employment contract includes the following provision:

23              **Article 10**

24              This Contract is subject to the provisions of the Labor Law No. (58)

25              for the year 1970 Gregorian and its amendments and the law on

26  _____

[2]   In his Complaint, Plaintiff alleges, with no explication whatsoever, that "[t]his suit is properly

27  venued in the United States District Court for the Northern District of California."   (Compl.
   ¶ 2.)  Plaintiff points to no specific factual content that could support such a conclusion.

28

Social Solidarity No. (13) for the year 1980 Gregorian and its

amendments and all other decision[s], decree[s] or regulation[s]

which have not been specifically mentioned in this contract.

(Elhusami Decl., Ex. C (2011 Contract – English Translation), art. 10.)  By its terms, the contract

is unambiguously subject to, and incorporates all the provisions of, the applicable Libyan Labor

Law.[3]  (Aljazwi Decl. ¶ 8.)  Under the applicable Libyan Labor Law—namely, the Libyan Labor

Law No. 12 of 2010—all labor and employment disputes are subject to a <u>mandatory</u> and

<u>exclusive</u> conciliation, arbitration, and litigation process.  (*Id.*, Ex. B (Labor Law No. 12 of 2010)

§§ 101-09.)  In sum, Plaintiff expressly agreed to litigate any and all disputes arising out of his

employment in Libya before the Libyan courts.[4]

In this regard, the Court of Appeals' decision *Spradlin v. Lear Siegler Management
Services Company, Inc.*, 926 F.2d 865 (9th Cir. 1991), is instructive.  In that case, the plaintiff-
employee brought suit in California against the defendant-employer, a United States corporation
with its principal place of business outside California.  *Id.* at 866.  Even though the plaintiff was
employed in Saudi Arabia at all times relevant to his complaint, he brought suit in California after
relocating there upon his termination, asserting a claim for breach of contract and "related

---

[3]  Courts have not hesitated to enforce forum selection agreements that are only incorporated by
reference or implication into the governing contractual document.  *See, e.g.*, *Cascade
Promotion Corp. v. AMA Sys., LLC*, No. C 07-1513 CW, 2007 WL 1574544, at *1-2 (N.D.
Cal. May 30, 2007) (enforcing forum selection clause appearing in independent document
incorporated by reference into the parties' contract); *Middleburg Training Ctr., Inc. v.
Firestone*, 477 F. Supp. 2d 719, 725 (E.D. Va. 2007) (concluding that a statutory forum
selection provision was implicitly incorporated into contracts covered by the statute).  For
example, in *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (9th Cir. 1998), the
employees in question were employed under a contract mandated by the Philippine
government which, among other things, incorporated a Philippine statute according an arm of
the government exclusive jurisdiction to hear claims arising out of the employment
relationship.  *Id.* at 219-20.  The Court of Appeals enforced the clause, noting that the fact that
"the forum selection clause was imposed by an arm of the Philippine government rather than
by either party" did "not affect the fact that the forum selection clause is fundamentally fair."
*Id.* at 221.

[4]  Plaintiff may attempt to argue that the forum selection agreement can only apply to MS Libya,
which, as Plaintiff's employer, was the only Defendant to sign the agreement.  However, it is
axiomatic that where "the alleged conduct of the non-parties is so closely related to the
contractual relationship . . . the forum selection clause applies to all defendants." *Manetti-
Farrow*, 858 F.2d at 514 n.5.  Here, the alleged conduct of all the Defendants is closely tied to
the contractual relationship between Plaintiff and MS Libya.  Indeed, Plaintiff consistently
conflates the Defendants throughout his Complaint.

1   claims," including age discrimination.  *Id.*  Despite the plaintiff's post-employment residence in

2   California, the Court of Appeals held that the parties' forum selection agreement must be

3   enforced in the absence of a clear, contrary showing by the plaintiff.  *Id.* at 867-69; *see also*

4   *Manetti-Farrow*, 858 F.2d at 515 (enforcing a forum selection clause even where the alleged

5   wrongful acts were committed principally in the United States and the harmful effects were felt

6   by the plaintiff in California, noting that the complaint centered on a dispute over a contract

7   entered with a foreign corporation with performance to occur abroad).

8       The facts are only more compelling here; although Plaintiff has elected to reside in

9   California following his employment, his employment was in Libya with a Libyan entity.  Under

10  these circumstances, Plaintiff has not, and cannot, satisfy the "heavy burden" of making a "clear

11  showing" that Libya would be "such an inconvenient forum as to deprive Plaintiff of his day in

12  court."  *Sarmiento v. BMG Entm't*, 326 F. Supp. 2d 1108, 1112 (C.D. Cal. 2003).  Indeed, all the

13  evidence before the Court points in the opposite direction: *i.e.*, that litigation of this action in

14  Libya would be *less* burdensome, expensive, and inefficient.  (*See supra* Part III.D.)  Meanwhile,

15  Plaintiff cannot rest on mere speculation that the Libyan courts or legal system may not

16  adequately safeguard his interests.  *Manetti-Farrow*, 858 F.2d at 515.  Nor does it matter whether

17  Plaintiff would have to "structure his case differently" in Libya, *Riley v. Kingsley Underwriting*

18  *Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992), or whether "a contrary result would be

19  forthcoming," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629

20  (1985).  But in any event, Plaintiff's claims would be cognizable under Libyan law and Plaintiff

21  would have various avenues of redress in the Libyan courts.  (Aljazwi Decl. ¶¶ 12-15.)

22      Because Plaintiff agreed to submit to the mandatory and exclusive adjudicative process

23  for labor and employment disputes in Libya, and because Plaintiff cannot meet his heavy burden

24  of showing that litigation of this dispute in Libya would be unreasonable and unjust, MS

25  Corporation respectfully submits that the Court should enforce the forum selection agreement and

26  dismiss the Complaint in its entirety for improper venue under Federal Rule of Civil Procedure

27  12(b)(3).

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]

**B.**     **In the Alternative, Plaintiff's Complaint Should Be Dismissed Under the Doctrine of *Forum Non Conveniens***

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). "In dismissing an action on *forum non conveniens* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.*   In addition, the "district court must make a choice of law determination in considering whether to dismiss the action." *Id.* at 1143. "Ultimately, "[a] forum non conveniens determination is committed to the sound discretion of the district court." *Id.*   In making this determination, "the allegations in the complaint need not be accepted as true and the court may consider evidence outside the pleadings." *Farhang v. Indian Inst. of Tech.*, C-08-02658 RMW, 2012 WL 113791, at *8 (N.D. Cal. Jan. 12, 2012).

**1.**     **Plaintiff's Choice of Forum is Entitled to Lesser Deference**

Although courts "afford greater deference to a plaintiff's choice of home forum because it is reasonable and convenient," "the deference due is far from absolute." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009) (quotation marks omitted). The presence of a United States plaintiff in a case is not "itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). Instead, the question is whether the defendant has made a clear showing either that (1) the inconvenience in litigating in the chosen forum is "out of proportion to the plaintiff's convenience," or (2) proceeding in the chosen forum is "inappropriate because of considerations affecting the court's own administrative and legal problems." *Id.* at 1410 (quotation marks omitted).

In any event, Plaintiff's choice of forum is entitled to minimal deference because he had every reason to expect that any litigation arising from his employment relationship would be conducted in Libya before the Libyan courts. As set forth above, Plaintiff's employment agreement was expressly made subject to the laws of Libya and he agreed to submit to the

mandatory and exclusive adjudicative process for labor and employment disputes in Libya. Furthermore, despite Plaintiff's consistent efforts to draw the attention elsewhere, the record is clear that this action arises out of Plaintiff's employment in Libya by a Libyan entity.  Presented with comparable facts, courts have not hesitated to transfer venue to the locus of employment. *Cf. Fontaine v. Washington Mut. Bank, Inc.*, No. CV 08-5659 PSG (Ex), 2009 WL 1202886, at *2-4 (C.D. Cal. Apr. 30, 2009) (providing that lesser deference warranted where action largely concerned with employment-related conduct in transferee forum); *Price v. Bell & Howell Phillipsburg Co.*, Civ. No. 92-208 (CSF), 1991 WL 88090, at *2 (D.N.J. Apr. 6, 1992) (observing, in transferring venue, that the plaintiff traveled to the transferee forum "to receive the benefits of employment" and through his discrimination action was "seeking to continue to derive benefits from such employment"); *Garrel v. NYLCare Health Care Plans, Inc.*, No. 98 Civ. 9077 (BSJ), 1999 WL 459925, at *5-7 (S.D.N.Y. June 29, 1999) (noting, in transferring venue, that plaintiff was stationed at transferee forum, where subsidiary of domestic employer was headquartered and majority of witnesses were located).

## 2.   Libya Is an Adequate Alternative Forum

The requirement that a foreign jurisdiction be an adequate alternative forum is not onerous.  Ordinarily, an adequate alternative forum will be found "when the defendant is amenable to process in the other jurisdiction."  *Piper Aircraft v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  In this regard, although MS Corporation does not concede that it is a proper Defendant to this action because it was never Plaintiff's employer, MS Corporation is willing to stipulate as a condition of dismissal that it will accept process to appear in a Libyan proceeding commenced by Plaintiff.  *See Pereira v. Utah Transp., Inc.*, 764 F.2d 686, 690 (9th Cir. 1985) (conditioning dismissal on the defendant's submission to the jurisdiction of the foreign courts); *Std. Bank PLC v. Vero Ins. Ltd.*, No. 08-cv-2127-PAB-BNB, 2009 WL 458680, at *3 (D. Colo. Feb. 24, 2009) (providing that a defendant's concession to being amenable to process in the alternative forum is generally sufficient), *vacated on other grounds*, No. 08-cv-212-PAB-KLM, 2009 WL 4730474 (D. Colo. Dec. 7, 2009).

While this alone suffices, the facts in this case go considerably farther.  As set forth above,

Libya maintains an established and independent judicial system that operates according to the rule of law, employs procedures not dissimilar to proceedings in the United States, and decides disputes in a prompt manner. (*See supra* Part III.C.) Plaintiff would be able to bring suit in Libya, retain experienced counsel, and utilize the Libyan judicial system just as if he were a resident of Libya. (*See id.*) In so doing, Plaintiff would have several avenues of redress available to him because Libya has developed a comprehensive legal regime governing labor and employment disputes that includes substantial and meaningful protections for employees. (*See id.*) In fact, Plaintiff's claims in this action would be cognizable, in all or in part, under Libyan law, including the Labor Law No. 12 of 2010. (*See id.*) On this record, this factor weighs in favor of dismissal. *See Loya*, 583 F.3d at 666 (stating that the "foreign forum must only provide the plaintiff with 'some' remedy in order for the alternative forum to be adequate."); *Piper*, 454 U.S. at 247 (providing that the remedy provided by the alternative forum must be "so clearly inadequate or unsatisfactory that it would be no remedy at all") (emphasis omitted).

### 3. The Choice-of-Law Analysis Favors Libyan Law

Before dismissing an action based on *forum non conveniens*, the "district court must make a choice of law determination." *Lueck*, 236 F.3d at 1142. Where, as here, the district court's jurisdiction is based on federal question jurisdiction, "federal common law applies to the choice of law rule determination." *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991). The "[f]ederal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id.*

As a threshold matter, the Restatement approach will honor the parties' agreement, if any, to freely choose the law of a given forum. *See* Restatement (Second) of Conflicts of Law § 187. Here, as set forth in greater detail above, Plaintiff agreed that his employment contract would be "subject to" Libyan Labor Law. (Elhasumi Decl., Ex. C (2011 Contract – English Translation), art. 10.) Under the Labor Law No. 12 of 2010, any and all actions challenging an employee's dismissal are deemed to "arise out of" the contract of employment. (Aljazwi Decl. ¶ 10.) Moreover, "a choice-of-law provision encompasses all causes of action arising out of, or related to, the agreement." *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1047 (N.D. Cal.

1   2006) (applying California law). Because resolution of Plaintiff's claims would require any court

2   to interpret Plaintiff's contractual entitlement to work outside Libya or to receive disability

3   benefits and family and medical leave, each of his claims is subject to the parties' contractual

4   choice-of-law provision.

5       Regardless, where there is no express agreement between the parties, the Restatement

6   approach simply directs courts to apply the law of the jurisdiction that has the most significant

7   relationship to the transaction or occurrence and the parties. *See* Restatement (Second) of

8   Conflicts of Law §§ 145, 188. In this case, there can be no doubt: each of Plaintiff's claims

9   presents a dispute arising out of his employment in Libya with his Libyan employer. Apart from

10  the fact that Plaintiff unilaterally decided to relocate to Northern California following his

11  evacuation, neither the parties nor the subject matter of this action has any connection whatsoever

12  to this forum. Accordingly, if this action were to be litigated in this District, the Court would be

13  required to apply Libyan Law. *See McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422-1426

14  (9th Cir. 1989) (applying Saudi Arabian law to claims arising out plaintiffs' employment in Saudi

15  Arabia).

16                  **4.      The Public Interest Factors Favor Dismissal**

17      When presented with a motion for dismissal based on *forum non conveniens*, "[c]ourts

18  consider the following public interest factors: (1) local interest of lawsuit; (2) the court's

19  familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court;

20  and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147. Each

21  of these factors weighs in favor of dismissal.

22      First, the simple, unassailable conclusion is this: Plaintiff's Complaint presents a dispute

23  arising out of his employment in Libya with the Libyan entity that employed him. Meanwhile,

24  the only connection between this action and the Northern District of California is that Plaintiff

25  unilaterally decided to reside here following his evacuation from Libya. This forum simply has

26  no meaningful connection to the parties' contractual relationship or the subject matter of the

27  dispute. Thus, Libya has by far the strongest local interest in adjudicating Plaintiff's claims. In

28  particular, Libya has a strong sovereign interest in regulating labor and employment issues within

its borders and ensuring that local corporations comply with applicable law.  (Aljazwi Decl. ¶¶ 6, 9.)  *See Piper*, 454 U.S. at 260 ("[T]here is a local interest in having localized controversies decided at home.") (quotation marks omitted).

Second, as set forth above, adjudication of Plaintiff's claims will require resort to Libyan law.  (*See supra* Part IV.B.3.)  Without a doubt, the Libyan courts are significantly more familiar with interpreting and applying Libyan law.

Third, the subject matter of this action is far too attenuated to justify asking the citizens of this District to sit in judgment of the circumstances of an employment relationship in Libya with a Libyan entity.

Fourth, "it is beyond dispute that the docket of the Northern District of California is heavily congested."  *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1202 (C.D. Cal. 2004).  Meanwhile, the Libyan courts are relatively well-positioned to adjudicate this dispute, with disputes heard and decided by a neutral decision-maker in a timely manner.  (Aljazwi Decl. ¶ 3.)

Fifth, the costs of resolving a dispute unrelated to this forum are myriad and substantial.  As an initial matter, litigation of this action here will require the Court to expend the time to familiarize itself with Libyan law and the norms of the Libyan workplace and to consider documents and testimony translated from a foreign language.  More importantly, however, there is at a bare minimum considerable doubt as to whether Plaintiff can ultimately prevail against MS Corporation in this District, as it was never Plaintiff's employer.  (*See supra* Part III.B.)  The fact that this action could be litigated through discovery, summary judgment, and even trial "for naught" is a factor that also weighs in favor of dismissal.  *Garrel*, 1999 WL 459925, at *7.

### 5.      The Private Interest Factors Favor Dismissal

When presented with a motion for dismissal based on *forum non conveniens*, "[c]ourts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that

1  make trial of a case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145 (quotation

2  marks omitted).  Each of these factors also weighs in favor of dismissal.

3      First, although Plaintiff unilaterally elected to move to this District following his

4  evacuation from Libya, all of Plaintiff's managers, co-workers, and other potential witnesses are

5  located in Libya or the North Africa and Middle East region.  (Elhasumi Decl. ¶¶ 3, 6-7.)  Apart

6  from Plaintiff, no witnesses are believed to reside in the United States, let alone this District.  (*Id.*

7  ¶ 6.)

8      Second, although Plaintiff resides here, he is a Libyan national and, as evidenced by the

9  circumstances of his employment, considered Libya a sufficiently convenient forum to agree to

10 work there for a period of almost two years.  (Compl. ¶¶ 3, 10.)  Meanwhile, due to all the key

11 players' proximity to Libya, litigation in this District would result in considerable burden and

12 expense and be significantly disruptive to ordinary business operations.   (Elhasumi Decl.

13 ¶¶ 12-13.)  It can take as long as thirty-nine hours to travel from Tripoli to San Francisco and a

14 round-trip business-class ticket typically costs more than $11,000.  (*Id.* ¶ 13.)  For the same

15 reasons, the cost of bringing witnesses to trial would be prohibitive.

16     Third, some MS Libya personnel and employment records including documents relating

17 to Plaintiff's employment with MS Libya, would need to be translated from Arabic if this action

18 were to proceed in this District, resulting in additional delay, burden, and expense.  (*Id.* ¶ 14.)

19     Fourth, at least one of Plaintiff's former co-workers is no longer under MS Libya's

20 control.  (*Id.* ¶ 6.)  If that co-worker's testimony is ultimately necessary, his testimony at trial

21 could not be compelled.  *See* FED. R. CIV. P. 45(c)(3)(a)(ii).

22     Fifth, there is no reason to believe that Plaintiff's actual employer, MS Libya, is either

23 amenable to process in this District or holds any assets in the United States.   As a result,

24 proceeding in this District runs a risk that any judgment obtained will be unenforceable.

25     Sixth, and in the final analysis, this action presents a dispute arising out of Plaintiff's

26 employment in Libya by a Libyan entity.  Apart from the fact that Plaintiff unilaterally decided to

27 relocate to Northern California following his evacuation, neither Plaintiff nor his claims have any

28 connection whatsoever to this forum.   Due to the key players' proximity to Libya and the

1    dispute's connection to Libya, proceeding in this District would be burdensome, expensive, and

2    inefficient. Accordingly, MS Corporation respectfully submits that this Court should exercise its

3    discretion to dismiss Plaintiff's Complaint under the doctrine of *forum non conveniens*.

4    **V.     CONCLUSION**

5           For the reasons set forth above, Defendant MS Corporation respectfully requests that

6    Plaintiff's Complaint be dismissed in its entirety, without leave to re-plead.

7

8    Dated: March 29, 2013                    ORRICK, HERRINGTON & SUTCLIFFE LLP,

9

10                                            By: _____ /s/ Joseph C. Liburt _____
                                                          LYNNE C. HERMLE
11                                                        JOSEPH C. LIBURT
                                                       Attorneys for Defendant
12                                                      Microsoft Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS THE COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES [3:13-cv-00141-EDL]