MICHAEL E. ADAMS (SBN: 47278)
LAW OFFICES OF MICHAEL E. ADAMS
702 Marshall Street, Suite 300
Redwood City, CA 94063
Telephone: (650) 599-9463
Fax: (650) 599-9785

Attorney for Plaintiff
MAHMOUD KEDKAD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHMOUD KEDKAD,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, INC., EMEA, NEPA, and MICROSOFT LIBYA,<br><br>Defendants. | Case No. 3:13-cv-00141 TEH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>DATE: July 8, 2013<br>TIME: 10:00 a.m.<br>COURTROOM 12 (19th Floor)<br>JUDGE: Hon. Thelton E. Henderson |

## I. INTRODUCTION

Defendant Microsoft Corporation, Inc. ("Microsoft") wrongly focuses on Microsoft Libya and its employees as centrally involved in the claims raised herein by Plaintiff Mahmoud Kedkad ("Kedkad"). In fact, none of the eleven claims stated in the complaint herein deal with the approximately one year time period, from February, 2010 to February, 2011, that Kedkad was located and working in Libya. Instead, all the claims deal with what employees not of Microsoft Libya, but of Microsoft itself, did and failed to do to or for Kedkad after he fled Libya in late February, 2011 to escape the mounting violence there as the revolution got underway. Nine of the eleven claims are based on state and federal statutes (ADA, :FMLA, and FEHA), and one is based on California

common law (the Seventh Claim for employment termination in violation of fundamental public policies). Only the Tenth Claim alleges breach of Kedkad's written employment contract. The breaches consisted of Microsoft personnel cutting off certain contractual employment benefits after Kedkad fled Libya, and then prematurely terminating the contract on December 1, 2011.

Kedkad contends that all his claims, including the Tenth Claim, sound against Microsoft itself, in that Microsoft sufficiently controlled his employment to constitute his employer, either jointly with Microsoft Libya or as a single integrated entity that included Microsoft Libya. Additionally, Microsoft now admits that the regional entities named in the complaint, namely NEPA and EMEA, are internal parts of Microsoft. Accordingly, Kedkad is concurrently herewith dismissing Microsoft Libya, NEPA, and EMEA from the instant case.

The contract referenced in the Tenth Claim contains a choice of law clause stating that Libyan law applies to the contract, but does not declare Libyan law to be applicable to any noncontractual claims. Nor does the contract include a forum selection clause permitting or requiring Libyan courts to exercise jurisdiction over any contract dispute, much less any noncontractual dispute. In terms of *forum non conveniens* analysis, there are multiple factors pointing toward this court retaining jurisdiction over all stated claims, including the Tenth Claim, rather than turn this case over to Libyan courts. Kedkad so requests. In the alternative, if this court were inclined to retain jurisdiction only of the noncontractual claims, then Kedkad offers to dismiss the Tenth Claim.

## II. FACTS

Kedkad worked in Libya as the marketing lead for Microsoft computers and software from approximately February 1, 2010 until late February, 2011, when he fled Libya due to the mounting violence there as the revolution got underway. During his work in Libya, he was nominally an employee of Microsoft Libya ("MS Libya"), but his hiring as well as the terms and conditions of his employment were largely controlled and

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

supervised by management personnel who administered geographic entities that he understood to be internal units of Microsoft. MS Libya was part of and subordinate to the geographic entity known as NEPA, which encompassed a subregion that included North Africa, the eastern Mediterranean, Pakistan, and Afghanistan, and had administrative headquarters in Dubui. NEPA in turn was part of and subordinate to the geographic entity known as EMEA, encompassed a region that included Europe, the Middle East, and Africa, and had administrative headquarters located in Paris, France. EMEA was subordinate to the Microsoft corporate headquarters in Redmond, Washington. [Opposing Declaration of Mahmoud Kedkad ("Kedkad Decl"), par. 2]

Kedkad was hired after several hiring interviews, including a one-on-one interview of him in Redmond, Washington that was conducted by Michel Diab, NEPA Director of Marketing, who was stationed in Dubai. Throughout Kedkad's ensuing work in Libya, Diab was his line supervisor to whom Kedkad reported on a day-to-day basis. In addition, Kedkad was interviewed through telephone calls to his home in Redwood Shores, California by Saad Ksheer, who then was the Country Manager for MS Libya, and whom Kedkad understood to be his direct supervisor in that Kedkad assisted him on strategic projects in Libya. After Kedkad's first two months or so in Libya, Ksheer was demoted and the position of Libya Country Manager remained vacant for several months until Microsoft appointed Khalid Elhasumi to that position. During said vacancy, Diab stepped in to supervise Kedkad in all respects. Upon his appoiintment, Elhasumi became Kedkad's direct supervisor, and remained so until Kedkad fled Libya in late February, 2011. From that point until NEPA notified Kedkad that his job was terminated effective December 1, 2011, Kedkad had no further contact with Elhasumi. [Kedkad Decl, par. 3].

The eleven claims stated in the complaint herein all relate to Kedkad's interactions with NEPA personnel following his departure from Libya in late February, 2011. These personnel included Michel Diab (Kedkad's above-referenced NEPA supervisor) and NEPA human resources personnel, notably Clemens Kastner. Of Kedkad's claims, only the Tenth Claim alleges breach of his second annual written contract (for the time period

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

from February 1, 2011 to January 31, 2012) with Microsoft Libya. The Tenth Claim alleges that NEPA human resources management personnel breached this contract by failing to continue certain of Kedkad's job benefits following his return to the United States on March 1, 2011, and by prematurely terminating the contract on December 1, 2011 instead of continuing it to the stated ending date of January 31, 2012. [Kedkad Decl., par. 4].

Further relevant witnesses are the Microsoft personnel located at the Microsoft offices in Mountain View, CA and San Francisco, CA with whom Kedkad networked and attended meetings following his return to the United States in March, 2011. Also relevant as witnesses are the numerous Microsoft hiring managers in the United :States whom Kedkad contacted in his desperate search for a new position after Clemens Kastner informed Kedkad that doing so was Kedkad's only recourse to seek to remain employed by Microsoft, in that Kastner declined to place Kedkad in any new position in the NEPA geographic area. [Kedkad Decl., par. 5].

Kedkad's approximately seven colleagues who had worked with him in Libya are marginally relevant to his contention stated in the complaint herein that, after all fled Libya following the start of the revolution, NEPA treated the colleagues more favorably than Kedkad by taking affirmative steps to place all the colleagues in new positions so that their gainful employment would not be interrupted by the hostilities in Libya. However, this contention can be supported through paperwork showing the positions into which the colleagues were placed, and any petinent testimony would come not from the colleagues, but rather from Clemens Kastner or other NEPA human resources personnel who placed them in the new positions. [Kedkad Decl., par. 6].

It appears that Libyan courts are not functioning well because the Libyan government has yet to establish a new national constitution that among other things would establish the role of the courts and the laws to be applied by the courts. It furthermore appears that significant civil unrest is ongoing in Libya, rendering it dangerous for U.S. citizens such as Kedkad to travel to Libya. [Kedkad Decl, par. 7].

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

In Defendant Microsoft Corporation's Responses to Plaintiff's Interrogatories attached to the Opposing Declaration of Michael E. Adams, Microsoft denies that Kedkad was dually or otherwise employed by Microsoft [Response to Interrogatory No. 32], but admits to facts consistent with Microsoft being either his employer jointly with MS Libya, or on the basis that Microsoft and MS Libya were a single integrated enterprise. Said facts include that neither EMEA nor NEPA were legal entities [Responses to Interrogatories Nos. 1 and 2], yet were part of a hierarchical chain of command reaching down from Microsoft headquarters in Redmond, Washington to MS Libya [Response to Interrogatory No. 15]. The most senior executive in MS Libya was its Country Director, who was subordinate to NEPA personnel in handling such affairs of MS Libya as setting annual budgets, determining sales and operational goals, and making personnel decisions [Responses to Interrogatories Nos. 23, 25, 27]. NEPA's human resources lead was principally responsible for dealing with MS Libya employees [Response to Interrogatory No. 38]. MS Libya itself, while nominally a separate legal entity, did not even have its own governing board [Response to Interrogatory No. 9].

## III. THE MOTION TO DISMISS SHOULD BE DENIED INSOFAR AS BASED ON THE CONTENTION THAT A FORUM SELECTION CLAUSE RENDERS VENUE IMPROPER

The second annual written contract between Kedkad and MS Libya, upon which the Tenth Claim of the complaint herein is based, contains no forum selection clause, but rather only the following choice of law clause:

> "This Contract is subject to the provisions of the Labor law No. (58) for the year 1970 Gregorian and its amendments and the law on Social >Solidarity No. (13) for the year 1980 Gregorian and its amendments and all other decision, decree or regulation which have not been specifically mentioned in this Contract.": [Defendant's Supporting Declaration of Khalid Elhasumi ("Elhasumi Decl."), Exhibit. C, Article 10].

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

The absence therefrom of any forum selection language appears advised, in that the previous annual written contract did, in addition to declaring the contract to be subject to applicable Libyan law, include the following forum selection language:

> "The Libyan courts shall have jurisdiction to decide any dispute that may arise in the future between the parties involved in this contract." [Elhasumi Decl., Exhib. A, Article 14].

Given the foregooing, Microsoft's motion to dismiss should be denied insofar as based on its contention that a forum selection clause renders venue improper under Federal Rrule of Civil Procedure 12(b)(3).

## IV. THE MOTION TO DISMISS SHOULD BE DENIED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

**(1) Libyan courts cannot provide an adequate alternative forum**

An offer such as made herein by Microsoft to submit to the jurisdiction of Libyan courts is concededly sufficient, absent extenuating circumstances, to establish that the proposed alternate forum is adequate. However, the extenuating circumstance exists herein that continued civil unrest in Libya poses danger to American citizens traveling to that country. See: CNN article on U.S. State Department travel advisory attached as Exhibit 1 to Kedkad Declaration. Plaintiff requests that this court take judicial notice of said travel danger. See: *Quinn v. Robinson*, 783 F.2d 776, 797, n. 18 (9 Cir. 1986)[noting that "American courts generally will take judicial notice of a state of uprising" and giving citations].

**(2) The choice-of-law analysis does not favor Libyan law**

As pointed out hereinabove, ten of the eleven claims alleged in the complaint herein are based on American law. Only the Tenth Claim invokes Libyan law by alleging that the second written employment contract was breached. However, the breach of contract issue is hardly complex, alleging only that Kedkad was not provided with certain

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

employment benefits and a portion of the salary due under the contract. Both the applicable Libyan law and the involved contract have already been translated into English by Microsoft, and the issues will probably be resolved readily through documentary evidence in the hands of NEPA human resources personnel. This role of Libyan law herein is minor and insufficient to merit transferring this case to Libyan courts. In the alternative, if the court takes a different view, Kedkad offers to dismiss the Tenth Claim.

**(3) The public interest factors favor denial of the motion to dismiss**

It is reasonably likely that Kedkad will ultimately succeed herein in proving that Microsoft dealt with him following his departure from Libya as his employer or co-employer, thereby rendering Microsoft an appropriate defendant to respond to the twelve claims alleged in the complaint herein, eleven of which are based on state and federal law protecting the employment rights of Kedkad, a California resident. Moreover, Kedkad was back in California from March, 2011 through November, 2011, the time period during which he contends that Microsoft personnel violated his said employment rights. Said state and federal laws implement substantial public policy interests, and this court is obviously familiar with the involved state and federal law.

**(4) The private interest factors favor denial of the motion to dismiss**

The majority of relevant witnesses are located in California, and the only material witnesses not in the United States are Michel Diab and Clemens Kastner. The undersigned is informed and believes that Diab remains a NEPA official located in Dubai, who periodically travels to the United States and, Kedkad contends, is actually an employee of Microsoft, and hence is someone whom Microsoft can produce as a witness. The undersigned is informed and believe that Kastner is no longer employed by Microsoft, but, as an ex-employee thereof, may be producible by Microsoft. In any event, the undersigned is informed and believes that Kastner is not currently located in Libya, so a transfer to Libyan courts would not facilitate his production as a witness. In the event that he cannot be produced, there undoubtedly will be sufficient documentary evidence of his actions and decisions regarding Kedkad in the hands of NEPA human resources

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

personnel that, Kedkad contends, remain under the control of Microsoft.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

DATED: June 5, 2013

*/s/ Michael E. Adams*
______________________________
MICHAEL E. ADAMS
Attorney for Plaintiff
MAHMOUD KEDKAD

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463