**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAHMOUD KEDKAD,

    Plaintiff,

v.

MICROSOFT CORPORATION, INC., et al.,

    Defendants.

NO. C13-0141 TEH

ORDER DENYING IN PART MOTION TO DISMISS AND ALLOWING PLAINTIFF TO FILE SUPPLEMENTAL BRIEFING AND EVIDENCE

This case came before the Court on July 8, 2013, on Defendant Microsoft's motion to dismiss for improper forum based on a purported forum selection clause in Plaintiff's employment contract or, in the alternative, to dismiss for *forum non conveniens*. After carefully considering the parties written and oral arguments, the Court now DENIES Defendant's motion to dismiss for improper venue, finding that the contract contained no forum selection clause. The Court does not rule on Defendants motion to dismiss for *forum non conveniens* at this time. The Court notes that Plaintiff, in his eight-page opposition, appears to argue that Libya is an inadequate alternative forum for this case, for purposes of this Court's *forum non conveniens* analysis. The Court now provides Plaintiff an additional opportunity to submit supplemental briefing and evidence with which to make this showing, as well as affording Defendant an opportunity to respond.

**BACKGROUND**

Plaintiff Mahmoud Kedkad was employed by Microsoft Libya in Tripoli, Libya, for thirteen months.[1] Compl. ¶¶ 7, 10, Dkt. No. 1. When the revolution erupted in Libya in

---

[1] Plaintiff originally sued Defendants MS Corporation, MS Libya, and two geographic entities within Microsoft's administrative structure. Plaintiff subsequently voluntarily dismissed his claims against all Defendants save MS Corporation. Dkt. No. 34. That this action proceeds against an entity that did not directly employ Plaintiff is not the subject of

February, 2011, Plaintiff was evacuated to the United States. *Id. ¶ 11.* He alleges the following facts:

Plaintiff is a U.S. citizen of Libyan national origin permanently residing in California. *Id.* at ¶ 3. He was hired as a Marketing Lead to serve in Tripoli, *id.* ¶ 9, and served from February 1, 2010 until February 27, 2011, when the revolution erupted and he was evacuated. His work from February 1, 2010 through February 1, 2011, was covered under an Employment Contract ("2010 Contract") with MS Libya. Dkt. No. 14-1, art. 2. Plaintiff entered into a subsequent contract with MS Libya "for one year starting 1/1/2011" ("2011 Contract"), which Defendant contends was a "superseding" contract purporting to cover the period between January 1, 2011 and January 1, 2012. Declaration of Khalid Elhasumi ("Elhasumi Decl.") ¶ 4, Dkt. No. 14; *see also id.,* Ex. C, Dkt. No. 14-3 (2011 Contract - English translation, art. 1). The Libyan revolution in late February, 2011 resulted in the closure of MS Libya and the evacuation of its employees. Compl. ¶¶ 10-13; Elhasumi Decl. ¶ 8. Plaintiff was evacuated from Libya and returned to the United States at that time, but alleges that he was traumatized by the violence with which he had been surrounded and suffered from symptoms of Post-Traumatic Stress Disorder ("PTSD"). *Id.* ¶¶ 11, 13. In mid-March 2011, Plaintiff was reassigned to Dubai, but he did not ultimately go. *Id.* at ¶ 15. Plaintiff alleges that he sought postponement or modifications of his work duties, but Defendant did not transfer him into a new job either in the United States or overseas. *Id.* at ¶¶ 15-19. Defendant was terminated on December 1, 2011, two months before the 2011 Contract was set to expire on the grounds that he failed to find a new job for which Microsoft Corporation would hire him. *Id.* at ¶ 21. Plaintiff now sues over Defendant's failure to pay certain benefits during the duration of his contractual term and failure to accommodate his disability in the form of PTSD due to witnessing the carnage in Libya. *Id.* ¶¶ 11, 13-20.

---

this motion and the Court therefore does not discuss facts regarding Plaintiff's employment contacts with MS Corporation, discussed at length by the parties. *See, e.g.*, Opp'n at 3, Dkt. No. 30; Mot. at 3, Dkt. No. 12.

The Contract

The 2011 Contract, the operative contract during the time period in question, contains a choice of law provision which states:

> This Contract is subject to the provisions of the Labor law No. (58) for the year 1970 Gregorian and its amendments and the law on Social Solidarity No. (13) for the year 1980 Gregorian and its amendments and all other decision[s], decree[s], or regulation[s] which have not been specifically mentioned in this contract.

Elhasumi Decl., Ex. C, Dkt. No. 14-3 (2011 Contract - English translation, art. 10).

Plaintiff contrasts the 2011 Contract with the first annual employment contract, which contained choice of law *and* choice of venue provisions. The 2010 Contract read:

> This contract is subject to the prevailing labor law, Social Security Law, and other relevant Law Applicable in Libya. The Libyan courts shall have jurisdiction to decide any dispute that may arise in the future between the parties involved in this contract.

Elhasumi Decl., Ex. A, Dkt. No. 14-1 (2010 Contract, art. 14). While Defendant indicates that the "superseding" contract was entered into due to reorganization of the various Microsoft entities, *see* Elhasumi Decl. ¶ 4 & Declaration of Ben Orndorff ("Orndorff Decl.") ¶ 2, the parties provide no information about why the choice of venue clause was omitted from the 2011 Contract.

Defendant argues that the choice of law provision in Article 10 of the 2011 Contract incorporates Libyan Labor Law No. 12 of 2010 ("Law No. 12") by reference. Even though Article 10 does not reference explicitly Law No. 12, Defendant submitted the declaration of Libyan labor and employment attorney Khaled Aljazwi, who avers that Law No. 12 amended Labor Law No. 58 of 1970, which is the provision cited by the Article 10. Declaration of Khaled Aljazwi ("Aljazwi Decl.") ¶ 8, Dkt. No. 15. Defendant argues that Law No. 12, in turn, outlines a procedure for "Labor disputes, conciliation, and arbitration." Dkt. No. 15-2 (English translation of Law No. 12) at §§ 101-109. Although sections 101-109 contain no explicit statement of exclusive jurisdiction, Defendant contends that these provisions amount to a "<u>mandatory</u> and <u>exclusive</u> conciliation, arbitration, and litigation process that varies depending on the precise nature of the dispute." Mot. at 7; Aljazwi Decl. ¶ 9 (emphasis in

3

originals). Mr. Aljazwi avers that "in one case, the High Supreme Court declared void a forum selection clause that would have required suit in California where the underlying employment agreement was executed in Libya, describing the Libyan Labor Law as 'peremptory.' Civil Challenge No. 67/18, dated June 13, 1972."[2] *Id.*

**LEGAL STANDARD**

A motion to dismiss based on a forum selection agreement is treated as a motion for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In this context, "the pleadings are not accepted as true," and the district court may "consider facts outside of the pleadings." *Id.* The "trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

The interpretation and enforceability of forum selection clauses is governed by federal law. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid, and should be honored "absent some compelling and countervailing reason." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972). *Bremen* recognized three exceptions that would make enforcement of a forum selection clause unreasonable: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought." *Richards v. Lloyd's of London,* 135 F.3d 1289, 1294 (9th Cir. 1998) (citing and quoting *Bremen,* 407 U.S. at 12-13, 15, 18) (internal quotation marks omitted). The *Bremen* framework applies to employment contracts. *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867-68 (9th Cir. 1991).

---

[2] This 1972 case is not attached to the Aljazwi Declaration.

4

When considering the enforceability of forum selection clauses in employment agreements, the Ninth Circuit has considered: (1) "any power differentials which may exist between the two parties to the contract, (2) the educational background of the party challenging the clause, (3) the business expertise of the party challenging the clause, and (4) the financial ability to bear [the] costs and inconvenience of litigating in the forum selected by the contract." *Murphy*, 362 F.3d at 1140-41 (internal quotation marks and citation omitted).

A party moving to dismiss based on *forum non conveniens* bears the burden of showing that (1) there is an adequate alternative forum, and (2) the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 257 (1981)). "The defendant bears the burden of proving the existence of an adequate alternative forum." *Cheng v. Boeing Co.,* 708 F.2d 1406, 1411 (9th Cir. 1983). When the plaintiff is a United States citizen, "the defendant must satisfy a heavy burden of proof." *Lueck*, 236 F.3d at 1143.

**DISCUSSION**

**I. DISMISSAL FOR IMPROPER VENUE BASED ON FORUM SELECTION CLAUSE**

Defendant moved to dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) on the ground that Article 10 of the 2011 Contract incorporates by reference the Law No. 12, which in turn purportedly contains statutory forum selection provisions mandating that Plaintiff bring claims arising out of his employment in Libya and its courts. Defendant's motion primarily addresses the *enforceability* of such a provision and whether Plaintiff can show one of the *Bremen* exceptions. Mot. at 7-8, Dkt. No. 12. Before the Court can apply federal law to the interpretation and enforcement of a

5

forum selection clause, however, it must, as a threshold issue, determine whether a forum selection clause exists.[3]

Defendant argues that Article 10 "unambiguously" incorporates all the provisions of Law No. 12, which in turn subjects all labor and employment disputes to a "<u>mandatory</u> and <u>exclusive</u> conciliation, arbitration, and litigation process." Mot. at 7 (emphasis in Mot.), Dkt. No. 12 (citing Law No. 12 of 2010 §§ 101-109, Dkt. No. 15-2). Yet nowhere in the cited sections of Law No. 12 do the words "mandatory" or "exclusive" appear. Rather, Defendant's sole support for this contention comes from the Aljazwi Declaration, wherein Aljazwi avers that Law No. 12 provides for this mandatory and exclusive process in Libyan courts and tribunals. Aljazwi Decl. ¶¶ 9-11, Dkt. No. 15. On this basis, Defendant concludes "Plaintiff expressly agreed to litigate any and all disputes arising out of his employment in Libya before the Libyan courts." *Id.* The Court disagrees. For the reasons set forth below, the Court concludes that Article 10 in the 2011 Contract does not operate as a forum selection clause, either on its face or via incorporation of Law No. 12, and therefore the Court does not reach the issue of its enforceability.

### A. Article 10 Contains No Forum Selection Clause On Its Face

Article 10 of the operative 2011 Contract does not, by its terms, contain a forum selection clause. It does not explicitly state a choice of venue or forum selection provision. Nor does its language indicate that it requires Plaintiff to submit to the "mandatory" or "exclusive" jurisdiction of the Libyan adjudicative process. This absence of forum selection

---

[3] In most cases, the plain language of a forum selection clause makes it clear that it is so. It stands to reason, however, that the party seeking to enforce the forum selection clause must prove that it is what it purports to be. *See, e.g., Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, No. CV 09-2140 PSG(JCX), 2010 WL 883831, at *13 (C.D. Cal. Mar. 5, 2010) ("In the Rule 12(b)(3) context, a party seeking to enforce a forum selection clause has the initial burden of establishing the existence and applicability of the forum selection clause"); *cf. Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("In short, the facts and allegations in Holland America's complaint and its affidavits are too thin to meet its initial burden to support jurisdiction under the Washington forum selection clause"); *Pantrol, Inc. v. Eltek Valere, Inc.*, No. 12-CV-158-JLQ, 2012 WL 1945490, at *4-6 (E.D. Wash. May 30, 2012) (determining as a threshold issue that a forum selection clause contained in a General Purchasing Agreement was not properly incorporated by reference into their agreement by the language contained in the parties' purchase orders).

6

language in Article 10 of the 2011 Contract is particularly notable because the predecessor 2010 Contract, which is not operative[4], arguably contains both a choice of law provision *and* a forum selection provision:

> Article 14: Applicable law
>
> This contract is subject to the prevailing labor law, Social Security Law, and other relevant Law Applicable in Libya. The *Libyan courts shall have jurisdiction to decide* any dispute that may arise in the future between the parties involved in this contract.

Dkt. No. 14-1 at 8 (emphasis added). Omission of this forum selection clause language from the 2011 Contract reinforces the Court's conclusion that nothing in the plain text of Article 10 indicates that it is a forum selection clause requiring Plaintiff to submit this case to "mandatory and exclusive" judicial processes in Libya.

### B. Article 10 Does Not Incorporate By Reference A Forum Selection Clause

The Court rejects Defendant's argument that Article 10 incorporates by reference or implication a forum selection clause from Law No. 12. Mot. at 7 n.3, Dkt. No. 12. While sections 101-109 of Law No. 12 may provide a conciliation, arbitration, and litigation process for employment and labor disputes in Libya, the Court does not agree that sections 101-109 operate as a cognizable "mandatory and exclusive" forum selection clause that can be analyzed under the *Bremen* framework. The Court additionally finds that even if, *arguendo*, sections 101-109 operated as a forum selection clause, Article 10 did not adequately incorporate by reference such a provision against Plaintiff.

The Court finds that sections 101-109 of Law No. 12, by their plain text, do not constitute a forum selection provision. Defendant's declarant avers that sections 101-109 set forth a mandatory and exclusive conciliation, arbitration, and litigation process. *See* Aljazwi

---

[4] The 2010 Contract appears to have been entered into on December 10, 2009 or December 21, 2009 with a term that ran from February 1, 2010 to February 1, 2011. Dkt. No. 14-1 at 1-2, 8. The 2011 Contract appears to have superseded the 2010 Contract as of January 1, 2011. Dkt. No. 14-3, art. 1; Elhasumi Decl. ¶ 4. The final termination date of the 2010 Contract, however, does not impact the Court's analysis. As of February 2011, the 2011 Contract clearly controlled.

7

Decl. ¶¶ 6-11, Dkt. No. 15 (describing sections 101-109).  The purported forum selection mechanism in sections 101-109, however, does not contain the word "mandatory" or "exclusive."   Notwithstanding the declarant's legal conclusions that sections 101-109 amount to a forum selection clause, the plain language of sections 101-109 is inconsistent with the clear and unequivocal language typical of forum selection clauses in agreements that have been evaluated for enforceability under the *Bremen* framework in controlling Ninth Circuit cases.  *Cf. Murphy,* 362 F.3d at 1136 (emphasis added) ("[t]his agreement shall be governed by and construed in accordance with the laws of the State of Wisconsin and *all suits with respect hereto shall be instituted exclusively* in the Circuit Court of Brown County, Wisconsin"); *Argueta*, 87 F.3d at 321-23 n. 3-4 (emphasis added) ("the parties *expressly submit themselves* to the Federal Tribunals or the State Courts of Guadalajara, Jalisco or Guaymas, Sonora . . . the BORROWER *expressly relinquishing* any other outside domicile (jurisdiction) which would correspond to them" and "the parties *expressly relinquish any jurisdiction* which would correspond to them in accordance with the law for territorial justice and *submit themselves to* the Tribunals of the First Party—the Judiciary of the Metropolitan Zone of this City"); *Spradlin*, 926 F.2d at 866 (emphasis added) ("[t]his Employment Agreement shall be governed by the laws of the Kingdom of Saudi Arabia. *The courts of Saudi Arabia shall have sole jurisdiction* over any disputes arising out of this Employment Agreement").  The Court has reviewed sections 101-109 of Law No. 12 and finds that none contain an explicit forum selection clause similar to the clauses recognized in *Murphy*, *Argueta*, or *Spradlin*, *supra*.  Accordingly, the Court concludes that sections 101-109 of Law No. 12 do not, by their terms, provide for a mandatory and exclusive forum selection provision.

However, assuming *arguendo*, that sections 101-109 contained a forum selection clause or a statutory scheme that operated to that effect, the Court disagrees that Article 10 adequately incorporates by reference such a forum selection provision against Plaintiff.

The Court looks to California law and general principles of contract formation and interpretation for persuasive guidance to inform its analysis of whether Article 10

8

incorporates the purported forum selection clause contained in Law No. 12 by reference or implication. The doctrine of incorporation allows a document or provision to be read into an agreement. 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2011). "A contract may validly include the provisions of a document not physically a part of the basic contract . . . 'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document. But each case must turn on its facts.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1331 (2009) (internal citations omitted) (citing *Williams Constr. Co. v. Standard–Pacific Corp.,* 254 Cal. App. 2d 442, 454 (1967)). Thus, California courts require that "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.'" *Id.*

In *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal. App. 3d 632, 641-45 (1986), the court held that because plaintiff stockbroker's employment application with defendant brokerage firm failed to clearly and unequivocally refer to stock exchange rules containing an arbitration clause, that arbitration clause was not successfully incorporated by reference into the employment contract. As a condition of her employment, plaintiff signed an application, one line of which indicated she was to be registered with several stock exchanges, including the New York Stock Exchange ("NYSE"). In Paragraph 2C of her application she "agree[d] to abide by the Statute(s), Constitutions(s), Rule(s), and By–Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application . . . ." *Id.* at 636. Plaintiff submitted her application to the NYSE, whose Rule 347 provided that any controversy between a stockbroker and member brokerage firm arising out of termination of employment would be submitted to arbitration, in accordance with the "arbitration procedure prescribed elsewhere in these rules." *Id.*

Plaintiff stockbroker was later terminated and brought a wrongful termination action, to which defendant petitioned to compel arbitration under the arbitration provision of the

9

1  NYSE. The court observed that "[a]rbitration is nowhere mentioned in paragraph 2C" and
2  that "even assuming paragraph 2C referred specifically to the NYSE, the reader would
3  thereafter be required to seek out Rule 347 thereof to locate the arbitration clause." *Id.* at
4  643. The *Chan* court held that the alleged agreement "failed to *clearly* and *unequivocally*
5  refer to the incorporated document . . . [T]he reference did not identify any document or
6  source by title. The reference was amorphous, and did not guide the reader to the
7  incorporated document." *Id.* (emphasis in original). Accordingly, the court held the
8  arbitration clause was not incorporated by reference and did not apply.

9  The Court finds *Chan* instructive for its reasoning on when incorporation by reference
10 is too tenuous. Like in *Chan*, the Court here finds that the terms of sections 101-109 of Law
11 No. 12, to the extent they provide for a mandatory and exclusive forum selection process in
12 Libya, were not incorporated by reference into Article 10 of the 2011 Contract.

13 Article 10 does not reference Law No. 12 at all, nor does it clearly and unequivocally
14 identify any referenced provision as providing for a forum selection clause. By contrast, the
15 inoperative 2010 Contract arguably used clear and unequivocal terms to alert Plaintiff that
16 his claims were to be adjudicated in Libyan courts. Dkt. No. 14-1, art. 14 ("The Libyan
17 courts shall have jurisdiction to decide any dispute that may arise in the future between the
18 parties involved in this contract"). Rather, Article 10 references Labor Law No. 58 of 1970,
19 which appears to have been repealed nearly one year before the parties executed the 2011
20 Contract.[5] Reference to a repealed statute hardly provides the clear and unequivocal
21 reference contemplated by the doctrine of incorporation.

22 Article 10 arguably calls to Plaintiff's attention Law No. 12, in so far as it is an
23 "amendment" to Labor Law No. 58. Aljazwi avers that the Labor Law No. 58 was amended
24 by and is, "in all respects relevant to this declaration, identical or substantially the same" as
25 Law No. 12. Aljazwi Decl. ¶ 8, Dkt. No. 15. Alternatively, Article 10's residual or catch-all

---

[5] The Court notes that Labor Law No. 58 of 1970 appears to have been repealed as of January 28, 2010, *see* Dkt. No. 15-2 at 4, §4; s*ee also* Aljazwi Decl. ¶ 8 ("Libya has since adopted amending legislation through the Labor Law No. 12 of 2010"). The Court notes that the 2011 Contract apparently was entered into as early as December 15, 2010, nearly a year after the repeal of Labor Law No. 58. Dkt. No. 14-3 at 3.

10

1     provision could refer to Law No. 12: "This Contract is subject to . . . all other decision[s],
2     decree[s] or regulation[s] which have not been specifically mentioned in this contract."  Dkt.
3     No. 14-1, art. 14.  The parties are silent as to whether Plaintiff was ever provided a copy of
4     the Labor Code provisions intended to be incorporated  by reference into Article 10.
5     However, like the buried chain of references in *Chan*, the Court finds that the incorporation
6     by reference here to non-enumerated sections of amending legislation to a repealed statute is
7     too attenuated.  To the extent Labor Law No. 58 is identical or substantially the same as Law
8     No. 12, and therefore contains the same purported forum selection clause, the Court finds
9     Article 10 does not sufficiently call to Plaintiff's attention the statutory provisions that
10    purportedly act as a forum selection clause contained in either Labor Law No. 58 or Law No.
11    12.

12         It is similarly unclear to the Court whether sections 101-109 of Labor Law 12, *to the
13    extent they provide for a mandatory and exclusive forum selection clause*, would have been
14    known or easily available to Plaintiff.  This skepticism is bolstered by the fact Defendant
15    submitted a five page declaration from Libyan attorney Khaled Aljazwi explaining that the
16    provisions of the Libyan Labor Code provide for an exclusive and mandatory forum selection
17    process, notwithstanding that neither of those words appear in sections 101-109, which
18    purportedly provide for the forum selection clause at issue here.  *See* Dkt. No. 15-2 (attaching
19    Law No. 12).  The Court finds that Article 10, like the agreement provision in *Chan*, is
20    "amorphous" and would not have "guide[ed] the reader" to the purported forum selection
21    clause in Law No. 12.  *Cf. Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154
22    F.3d 1072, 1075 (9th Cir. 1998) (rejecting incorporation by reference of arbitration provision
23    and procedures where subcontracting agreement made only general reference to "terms and
24    conditions of Contractor's labor agreements" that, in turn, provided for the arbitration
25    provisions).  Therefore, the Court declines to find Article 10 incorporates by reference a
26    forum selection clause.

27         The Court acknowledges that governing contractual documents may incorporate by
28    reference a forum selection clause.  Defendant cites several non-binding cases that stand for

11

1 that proposition. Mot. at 7 n. 3, Dkt. No. 12. The Court, however, finds these authorities

2 distinguishable.[6] Defendant cites no controlling authority that stands for the proposition that

3 the Court must find a forum selection clause exists when (1) the agreement does not – on its

4 face – appear to contain a forum selection clause; (2) when the statute incorporated by

5 reference fails to explicitly provide that disputes will be governed by a mandatory and

---

[6] In *Cascade Promotion Corporation v. AMA Systems, LLC*, No. C07-1513 CW, 2007 WL 1574544, at *1 (N.D. Cal. May 30, 2007), the court held enforceable a binding forum selection clause located in "General Terms and Conditions, as amended from time to time" that was incorporated by reference in a general contract; the forum selection clause stated the parties "consent to the exclusive jurisdiction of the courts of the State of Maryland, USA for any dispute arising out of their relationship" and that Maryland law governs. *Id. Cascade* is distinguishable because the language indicating "exclusive" forum selection in Maryland is clear and unambiguous and appears on the face of the document, which is in marked contrast to the Article 10, and sections 101-109 of Law No. 12.

In *Middleburg Training Center, Inc. v. Firestone*, 477 F. Supp. 2d 719, 725 (E.D. Va. 2007), the Eastern District of Virginia district court found the existence of a forum selection clause, but on facts far different from the case before this Court. In that case, the court held that when an "individual purchases a share of stock in a Virginia corporation, she, in effect, enters into a contract with the corporation. This contract incorporates the general corporation law of Virginia. Thus, when an individual purchases stock in a Virginia corporation she has constructive notice that she is bound by the terms of the [Virginia Stock Corporation Act], and in making the purchase, she agrees to all of the statutory provisions, including the forum selection provision contained in Va. Code § 13.1-740." *Id.* at 725. *Middleburg* stands less for the proposition of incorporation by reference of statutory forum selection clauses than it does for the "well-settled principle" in Virginia that "the general corporation law of the State" applies via constructive notice to contracts between a corporation and its shareholders. *Id.* at 724. Moreover, unlike the purported forum selection clause in Law No. 12, the forum selection provision in the Virgnia Stock Corporation Act is unequivocally so. *See* Va. Code Ann. § 13.1-740 ("The corporation shall commence the proceeding in the circuit court of the city or county where the corporation's principal office, or, if none in the Commonwealth, where its registered office, is located").

Lastly, Defendant cites *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998). In that case, seamen injured aboard their vessel sued the vessel's owner. The owner moved for summary judgment finding that the forum selection clauses in the seamen's contracts required their cause of action to be filed in the Republic of the Philippines. *Id.* at 217. The forum selection clauses in *Marinechance,* notwithstanding their incorporation by reference, were clear and unequivocal: employment disputes would be resolved "through the established grievance machinery in the Revised Employment Contract for Seafarers, the adjudication procedures of Philippine Overseas Employment Administration and the Philippine Courts of Justice, in that order"; the revised contract, in turn, provided that certain Philippine government agencies "*shall have original and exclusive jurisdiction* over any and all disputes or controversies arising out of or by virtue of this Contract . . . " *Id.* at 220 (emphasis added). Based on this, and several other provisions that bestowed the Philippines "exclusive jurisdiction" to hear disputes, the Fifth Circuit held that these provisions pointed to the resolution of the seamen's dispute in the Philippines. *Marinechance* is not controlling authority, however, and the incorporated references to exclusive jurisdiction are clear and unequivocal, unlike Article 10 or sections 101-109 of Law No. 12 here.

12

1 exclusive forum selection provision; and (3) the only support for such a position comes from
2 an attorney declaration proffered by the Defendant.

3      Although a novel argument, the Court finds that the chain of incorporation by
4 reference here is too attenuated and opaque to constitute a forum selection clause.
5 Accordingly, the Court finds, as a threshold matter, that no forum selection clause exists. *See*
6 *Morgan Laboratories Inc. v. Micro Data Base Sys., Inc.*, No. C96-3998 TEH, 1997 WL
7 258886, at *2 (N.D. Cal. Jan. 22, 1997) ("Although forum selection clauses enjoy
8 presumptive validity, MDBS has failed to demonstrate that its agreement with Morgan
9 contains a forum selection clause. This failure is fatal to its motion to dismiss for improper
10 venue"). Accordingly, the Court DENIES Defendant's Rule 12(b)(3) Motion To Dismiss for
11 Improper Venue based on a forum selection clause.

## II. DISMISSAL FOR *FORUM NON CONVENIENS*

14      To dismiss based on *forum non conveniens*, here the Defendant must show that (1)
15 Libya is an adequate alternative forum, and (2) the balance of private and public interest
16 factors favors dismissal. *Lueck*, 236 F.3d at 1142. "The defendant bears the burden of
17 proving the existence of an adequate alternative forum," *Cheng*, 708 F.2d at 1411, and when
18 the plaintiff is a United States citizen, as is the case here, "the defendant must satisfy a heavy
19 burden of proof." *Lueck*, 236 F.3d at 1143. "The mere fact that a case involves conduct or
20 plaintiffs from overseas is not enough for dismissal." *Carijano v. Occidental Petroleum*
21 *Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) *cert. denied*, 133 S. Ct. 1996 (2013) (citing
22 *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1181–82 (9th Cir. 2006)). There may
23 be "rare circumstances . . . where the remedy offered by the other forum is clearly
24 unsatisfactory." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th
25 Cir. 1991).

26      Plaintiff appears to argue that Libya is not an adequate alternative forum. Plaintiff's
27 counsel states that "continued civil unrest in Libya poses danger to American citizens
28 traveling to that country," Opp'n at 4, 6, Dkt. No. 30, and Plaintiff himself avers that "the

13

1 Libyan courts are not functioning well because the Libyan government has yet to establish a
2 new national constitution that among other things would establish the role of the courts and
3 the laws to be applied by the courts," Declaration of Mahmoud Kedkad ¶ 7, Dkt. No. 32.
4 However, Plaintiff fails to provide any non-conclusory factual support for his position.[7]  Nor
5 does Plaintiff's counsel, in his eight-page opposition brief, address whether any statutes of
6 limitation under applicable Libyan law might impact the adequacy of Libya as an alternative
7 forum.  "An adequate forum does not exist if a statute of limitations bars the bringing of the
8 case in that forum."  *Carijano*, 643 F.3d at 1235 (citing *Bank of Credit and Commerce Int'l
9 (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001)).

10 In light of Defendant's motion and submitted evidence, the Court finds that Plaintiff
11 has failed to meaningfully oppose Defendant's argument that Libya is an adequate alternative
12 forum for this case, for purposes of this Court's *forum non conveniens* analysis.  *Cf.
13 Petersen,* 715 F.3d at 279 (emphasis in original) (in the context of forum selection clause
14 analysis, plaintiff submitted and court took judicial notice of, United States Department of
15 State report tending to demonstrate that the plaintiff "(1) . . . would not be *legally* permitted
16 to travel to Saudi Arabia; (2) he would not in any event be able to obtain a fair trial in Saudi
17 Arabia; and (3) his employer could detain him in Saudi Arabia for the entire duration of any
18 legal proceedings").  In further contrast, Defendant here has submitted declarations from a
19 Libyan labor and employment lawyer averring that the Libyan judicial system is functional,
20 fair, efficient, and impartial, and that "after carefully reviewing the allegations made by Mr.
21 Kedkad in the Complaint, there are various avenues of redress that would be available to Mr.
22 Kedkad in Libya."  *Aljazwi Decl*. ¶¶ 3-5,13, 15, Dkt. No. 15; *Aljazwi Reply Decl.*, Dkt. No.
23 35-2.

---

[7] Instead, Plaintiff offers the Court a one-page printout of a March 11, 2013 CNN article stating that there is "instability and violence" in Libya.  Kedkad Decl., Ex. 1, Dkt. No. 32.

14

The Court now provides Plaintiff an additional opportunity to submit supplemental briefing and evidence to assist the Court in its *forum non conveniens* analysis in the following manner:

1. Any supplemental briefing by Plaintiff addressing the adequacy of Libya as an alternative forum shall be no more than ten pages in length, exclusive of any affidavits or declarations, and shall be filed on or before **September 24, 2013**;
2. Any supplemental affidavits or declarations in support of this briefing shall be filed on or before **September 24, 2013**; and
3. Any responsive briefing by Defendant shall be no more than five pages in length and shall be filed on or before **October 1, 2013**.

In the event Plaintiff fails to submit supplemental briefing and evidence as described above, the Court may dismiss the Complaint under the doctrine of *forum non conveniens* on the basis that Defendant has satisfied its burden of showing Libya is an adequate alternative forum and that the balance of the private and public interest factors favors dismissal.

**IT IS SO ORDERED.**

Dated: 09/03/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT