MICHAEL E. ADAMS (SBN: 47278)
LAW OFFICES OF MICHAEL E. ADAMS
702 Marshall Street, Suite 300
Redwood City, CA 94063
Telephone: (650) 599-9463
Fax: (650) 599-9785

Attorney for Plaintiff
MAHMOUD KEDKAD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHMOUD KEDKAD,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION, INC.,<br>\<br>Defendants.<br>___________________________________ | Case No. 3:13-cv-00141 TEH<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** |

## I. INTRODUCTION

In its order dated September 3, 2013 and entitled Order Denying in Part Motion to Dismiss and Allowing Plaintiff to File Supplemental Briefing and Evidence, the court denied the motion to dismiss brought by Defendant Microsoft Corporation, Inc. ("MCI") insofar as the motion was based on a purported forum selection clause. As to MCI's remaining ground for the motion, namely *forum non conveniens*, the court granted the parties an opportunity to file supplemental briefing and evidence. The parties yesterday filed a stipulaton and proposed order extending to today, September 25, the deadline for Plaintiff to file its supplemental briefing and evidence, and extending to October 3, the deadline for MCI to do so, and the court issued an order approving said stipulation.

A defendant bringing a motion to dismiss on *forum non conveniens* grounds must meet the burden of establishing a foreign court is an adequate alternative forum. *Lueck v. Sundstrand Corporation, et. al.,* 236 F.3d 1137, 1142 (2001). Where as herein the plaintiff is a U.S. citizen, defendant's burden is heavy. *Id.,* at 1143. If the defendant meets that first hurdle, the defendant must then establish that a weighing of private interest factors and public interest factors "strongly favor[s] trial in a foreign country." *Id.,* at 1143. Plaintiff argues hereinbelow that Libyan courts do not constitute an adequate alternative forum for this case, and, in any event, that a weighing of private interest factors and public interest factors does not strongly favor trial of Plaintiff's instant claims in the Libyan courts.

## II. MCI CANNOT MEET ITS HEAVY BURDEN OF ESTABLISHING THAT LIBYAN COURTS OFFER AN ADEQUATE ALTERNATIVE FORUM FOR THE INSTANT

Libyan courts do not offer an adequate alternative forum for either or both of the following reasons.

### A. Under Libyan law, the statute of limitations has expired on all of Kedkad's claims

Expiration of the statute of limitations in the proposed alternative forum on the involved claims renders that forum inadequate, unless the defendant accepts a court-imposed condition to the granting of the defendant's motion to dismiss on *forum non conveniens* that the defendant agree to waive any statute of limitations defense in the alternative forum. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011).

Herein, the declaration submitted herewith from Kedkad's legal expert, Fituri Tabet, Libyan law provides for a one year limitations period following the termination of employment for the aggrieved employee to initiate a lawsuit asserting any claims arising out of the employment contract. The Tabet declaration points out that a Libyan court

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

would deem all of Kedkad's claims herein, including those based on U.S. statutory or constitutional provisions, to arise from his employment contract, and hence to be subject to the one year limitations period if brought in a Libyan court. In that Kedkad's employment relationship with MCI ended when his employment contract was terminated by MCI on or about December 1, 2011, the Libyan statute of limitations started to run at that point at the latest. If Kedkad had filed the instant action within the ensuing year, e.g. by or before December , 2013, the Libyan courts would consider his claims timely, in that, as pointed out in the Tabet declaration, Libyan law does no deem time to continue running while the claims are pending before a different court. However, Kedkad filed his instant claims with this curt on January 10, 2013, more than thirteen months after his employment had ended.

Accordingly, the Libyan courts would deem all of Kedkad's claims to be barred by the one year statute of limitations unless MCI were to agree to a condition imposed by this court that any statute of limitations defense be waived by MCI if this case were transferred to the Libyan courts.

**B. United States courts have exclusive subject matter jurisdiction over Kedkad's ADA and FEHA claims.**

In evaluating a motion for dismissal based on *forum non conveniens*, the court must engage in a choice of law analysis. *Lueck, 336 F.3d at 1148.* This analysis is "determinative when the case involves a United States statute requiring venue in the United States." *id.* The court therein cited the examples of the Jones Act and the Federal Emloyers' Liability Act, both of which "'contain special provisions mandating venue in the United States district courts." *id.*

Similarly, Kedkad's ADA and FEHA claims are governed by statutory provisions mandating venue in certain courts in the United States. As to the ADA, it is established that U.S. District Courts have exclusive jurisdiction over such claims. *Gable v. United States*, 106 Fed. Cl. 294 (2012) [holding that the United States Court of Federal Claims hence lacks subject matter jurisdiction over any ADA claim], *Johnson v. United States*,

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

97 Fed. Cl. 560, 564 (2011) [same]. As explained in *Colbert v. Harris County Juvenile Probation*, 2013 U.S. Dist. LEXIS 117491 [Middle Dist., Tenn. 2013], ADA claims must be venued on the same basis as Title VII claims, namely the U.S. District Court(s) for:

> the "judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 United States Code §2000e-5(f)(3).

Similarly, FEHA claims must be brought in California courts, and venued according to criteria paralleling the above-quoted criteria for venuing ADA claims. Cal. Gov. Code §12965(b).[1]

Accordingly, if this case were dismissed and re-filed in Libya, the courts there would lack subject matter jurisdiction over Kedkad's ADA and FEHA claims (the First through Sixth Claims alleged in the Complaint herein), and hence could not validly adjudicate said claims even if said courts tried to do so. Libyan courts hence do not constitute an adequate alternative forum.

## III. IN THE ALTERNATIVE, THE WEIGHING OF PUBLIC AND PRIVATE INTEREST FACTS DOES NOT STONGLY FAVOR CONDUCTING THE TRIAL OF KEDKAD'S CLAIMS IN LIBYAN COURTS

### A. The private interest factors do not strongly favor conducting trial of the claims herein in a Libyan court.

In *Lueck*, 236 F.3d at 1145, the court listed seven private interest factors considered by the courts in evaluating a dismissal motion based on *forum non conveniens*. These private interest factors will be discussed hereinbelow as they apply to the facts and circumstances herein:

---

[1] Said statutory provision expressly specifies only California Superior Courts, but to those specified courts must be added U.S. District Courts sitting in California, which, given the Supremacy Clause, can assert ancillary jurisdiction over FEHA claims arising in California, where such claims are conjoined with federal claims based on the same facts.

LAW OFFICES OF MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

**(1) The residence of the parties and the witnesses**. Since before he accepted the involved employment in Libya, Kedkad has resided with his family in Redwood Shores, CA, within the judical district of this court. [Kedkad Opposing Declaration dated June 5, 2013 ("Kedkad Decl."), par. 3] MCI is headquartered in Redmond, WA, and has California offices located in both Mountain View, CA and San Francisco, CA with which Kedkad interacted (first by networking and attending meetings) and then by seeking placement into a new job position for MCI. [Kedkad Decl., par. 5]. Kedkad also sent numerous job-seeking emails to an array of MCI's hiring managers located in the United States.

**(2) The forum's convenience to the litigants**

This court is considerably more convenient than a Libyan court, both to both Kedkad, who resides in its judicial district, and MCI, which is headquartered in Redmond, Washington, only a 90 minute plane flight away

**(3) Access to physical evidence and other sources of proof;**

The involved documentary evidence, mainly include (i) the two annual written employment agreements with Kedkad, both of which have already been translated and produced herein by MCI; (ii) personnel records on Kedkad and his erstwhile co-workers in Libya which are in the custody of NEPA human resources personnel located in Dubai, and MCI probably has substantial or complete control over said records and personnel, and should be able to produce them as readily to this court as to a Libyan court; (iii) email correspondence between Kedkad and Clemens Kaster, Kedkad's primary human relations contact after he fled from Libya, to which both MCI and Kedkad have ready access; and (iv) email correspondence from Kedkad to MCI hiring managers in the United States, to which both MCI and Kedkad have ready access.

**(4) Whether unwilling witnesses can be compelled to testify**

As a practical matter, MCI can require its employees, and NEPA personnel whom MCI either employs or substantially controls, to testify before either this court or a Libyan court. The MCI employees in the San Francisco Bay Area and Redmond, WA who

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

witnessed Kedkad's networking and job seeking efforts following his return from Libya could travel to this court at considerably less cost, and with less physical danger, than if they had to travel to a Libyan court. These employees (some of them named in Plaintiff's prior opposition papers) are greater in number than the couple of NEPA human resources personnel (principally Clemens Kastner) who are witnesses to their interactions with Kedkad following his return from Libya to the United States, and hence the overall cost of producing relevant witnesses would be less if this court retained the case than if the case were re-filed in a Libyan court.

**(5) The cost of bringing witnesses to trial**

See discussion of point (4) immediately hereinabove.

**(6) The enforceability of the judgment**

A judgment issued by this court against MCI would be readily enforceable given, *inter alia*, the presence of MCI facilities located within the judicial district of this court. Enforcement against MCI of a judgment issued by a Libyan court would be problematic, in that MCI apparently has neither personnel nor facilities in Libya at this time.

**(7) All other practical problems that make trial of a case easy, expeditious, and inexpensive.**

The civil unrest in Libya (see U.S. State Department advisories attached as Exhibits 1 and 2 to the supplemental Kedkad declaration filed herewith) make it problematic for the parties as well as witnesses to have to travel to Libya if this case were refiled there.

**A. The public interest factors do not strongly favor conducting trial of the claims herein in a Libyan court.**

In *Lueck*, 236 F.3d at 1147, the court listed five public interest factors considered by the courts in evaluating a dismissal motion based on *forum non conveniens*. These public interest factors will be discussed hereinbelow as they apply to the facts and circumstances herein:

**(1) Local interest of lawsuit**. The citizens of California have a strong

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

interest in enforcing state and federal laws designed to protect California residents from arbitrary and discriminatory actions by their employers. Libyan citizens have little such interest under the circumstances herein, in that Kedkad's claims herein are directed at the wrongful conduct by MCI representatives *after* Kedkad fled from Libya. Indeed, most of said conduct (apart from the free speech incident in Turkey) occurred during the nine months (March through November, 2011) that Kedkad was again residing at his family's home in Redwood Shores, while obtaining psychotherapeutic treatment for his PTSD, networking with MCI employees in the San Francisco Bay Area and Redmond, WA to maintain his skills and seek work opportunities, seeking a medical leave of absence and/or the accommodation of allowing him to perform productive work from home, and then sending emails to many U.S. hiring managers to seek a new position with MCI.

**(2) The court's familiarity with governing law**

This court is eminently familiar with the law governing Kedkad's ADA, FEHA, FMLA, and equitable relief claims. The only exception is Kedkad's claim that MCI breached the employment contract that is concededly governed by Libyan law pursuant to its choice of law clause. However, Kedkad's breach of contract claim requires no complex foray into Libyan law, but rather is limited to the contentions that (i) following his flight from Libya, MCI paid only his salary, but not the other job benefits that he had been receiving in Libya and to which he remained entitled, and (ii) MCI prematurely terminated the employment contract on or about December 1, 2011, instead of allowing the contract to run its course to approximately February 1, 2012. Both contentions primarily involve exploration of MCI's policies and practices for its employees, and have little to do with Libyan law. However, if the court considers this breach of contract claim to constitute a "tipping factor" toward dismissal of the entire instant action, Kedkad reiterates his offer to dismiss this claim, which he in any event considers minor in comparision to his other claims, in order to avoid that result.

**(3 Burden on local courts and juries**

This case would require perhaps a week for trial, and hence is no more

LAW OFFICES OF
MICHAEL E. ADAMS
702 MARSHALL ST., #300
REDWOOD CITY CA 94063
(650) 599-9463

burdensome than most cases filed here. Moreover, the consideration of any burden must be discounted by the fact that this case is primarily local to the San Francisco Bay Area, in that Kedkad was back residing here during nearly all the alleged misconduct by MCI and the personnel it controlled.

**(4) Congestion in the court**

While this court has some congestion in its docket, there is no evidence that Libyan courts are any less congested, especially given the conditions of civil unrest prevailing there.

**(5) The cost of resolving a dispute unrelated to this forum**

As stated with respect to factor (3), hereinabove, this consideration of cost should be substantially discounted by the fact that this case is indeed primarily local to the judical district of this court. In contrast, the cost to Kedkad of prosecuting this matter before a Libyan court would be prohibitive. [see Kedkad Suppmental Declaration].

**IV. CONCLUSION**

For the foregoing reasons, the motion to dismiss should be denied.

DATED: September 25, 2013

*/s/ Michael E. Adams*
________________________________
MICHAEL E. ADAMS