IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAHMOUD KEDKAD,

            Plaintiff,

v.

MICROSOFT CORPORATION, INC., et al.,

            Defendants.

NO. C13-0141 TEH

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

This matter came before the Court on July 8, 2013, on Defendant Microsoft Corporation, Inc. ("MS Corporation")'s motion to dismiss for improper venue due to a purported forum selection clause and for forum non conveniens. The Court denied MS Corporation's motion as to venue, but refrained from ruling on forum non conveniens grounds pending supplemental briefing from the parties. (Docket No. 42.) The parties submitted supplemental briefing on the forum non conveniens issue. (Docket Nos. 43, 46.) The Court now denies MS Corporation's motion.

**BACKGROUND**

Plaintiff Mahmoud Kedkad is a U.S. citizen of Libyan national origin permanently residing in California. Compl. ¶ 3 (Docket No. 1). Plaintiff was employed as a Marketing Lead by Microsoft Libya ("MS Libya") in Tripoli, Libya, and served from February 1, 2010 until February 27, 2011, when the revolution erupted in Libya and Plaintiff was evacuated to the United States on a flight chartered by the U.S. Embassy. Compl. ¶¶ 3, 7, 9-11. He alleges the following facts, unless otherwise indicated:

Plaintiff worked from February 1, 2010, through February 1, 2011, under an Employment Contract ("2010 Contract") with MS Libya. 2010 Employment Contract

(Docket No. 14-1, art. 2). Plaintiff entered into a subsequent contract with MS Libya "for one year starting 1/1/2011" ("2011 Contract"), which MS Corporation contends was a "superseding" contract purporting to cover the period between January 1, 2011, and January 1, 2012. Declaration of Khalid Elhasumi ("Elhasumi Decl.") ¶ 4 (Docket No. 14); *see also id.*, Ex. C (Docket No. 14-3) (2011 Contract - English translation, art. 1).

The 2011 Contract, the operative contract during the time period in question, contains a choice of law provision mandating the application of Libyan law, which states:

> This Contract *is subject to* the provisions of the Labor law No. (58) for the year 1970 Gregorian and its amendments and the law on Social Solidarity No. (13) for the year 1980 Gregorian and its amendments and all other decision[s], decree[s], or regulation[s] which have not been specifically mentioned in this contract.

Elhasumi Decl., Ex. C (2011 Contract - English translation, art. 10) (emphasis added).

The Libyan revolution in late February 2011 resulted in the closure of MS Libya and the evacuation of its employees. Compl. ¶¶ 10-13; Elhasumi Decl. ¶ 8. Plaintiff was evacuated from Libya and returned to the United States at that time but alleges that he was traumatized by the violence he had observed and suffered from symptoms of Post-Traumatic Stress Disorder ("PTSD"). *Id.* ¶¶ 11, 13. In mid-March 2011, Plaintiff was reassigned to Dubai, but he did not ultimately go. *Id.* ¶ 15. Plaintiff alleges that he sought postponement or modifications of his work duties, but he was not transferred into a new job either in the United States or overseas. *Id.* ¶¶ 15-19. Plaintiff was terminated on December 1, 2011, two months before the 2011 Contract was set to expire on grounds that he failed to find a new job for which MS Corporation would hire him. *Id.* ¶ 21. Plaintiff now sues over MS Corporation's failure to pay certain benefits during the duration of his contractual term and failure to accommodate his disability in the form of PTSD. *Id.* ¶¶ 11, 13-20. Specifically, Plaintiff alleges violations of the Americans with Disabilities Act, California's Fair Employment and Housing Act, the Family Medical Leave Act, the California Family Rights Act, and breach of the 2011 Contract. *Id.* ¶¶ 22-88.

Plaintiff originally sued Defendants MS Corporation, MS Libya, and two regional entities within Microsoft's administrative structure. Plaintiff subsequently voluntarily

United States District Court
For the Northern District of California

1  dismissed his claims against all Defendants save MS Corporation.  (Docket No. 34.)  The
2  legal sufficiency of this action in so far as it proceeds against MS Corporation, an entity that
3  did not directly employ Plaintiff, is not the subject of the instant motion to dismiss for forum
4  non conveniens, although it is discussed at length by the parties and may later be considered
5  on a dispositive motion.  *See, e.g.*, Opp'n at 3 (Docket No. 30); Mot. at 3 (Docket No. 12);
6  Reply at 8-12 (Docket No. 35); *see also* Oct. 21, 2013 Joint Case Management Conference
7  Statement at 6 (Docket No. 49) (discussing anticipated motions).

**LEGAL STANDARD**

Dismissal pursuant to the doctrine of forum non conveniens is a "drastic exercise of the court's inherent power" and one that is "an exceptional tool to be employed sparingly." *Carijano v. Occidental Petroleum*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).  "The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal." *Id.* (citation omitted).  A defendant must show that the chosen forum results in "oppressiveness and vexation . . . out of all proportion" to the Plaintiff's convenience. *Carijano*, 643 F.3d at 1227 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

To prevail on a motion to dismiss based on forum non conveniens, a defendant bears the burden of demonstrating (1) the adequacy of the alternative forum and (2) that the balance of private and public interest factors favors dismissal. *Dole Food Co.*, 303 F.3d at 1118.  Before dismissing a case for forum non conveniens, the court must make a choice of law determination, which is "only determinative when the case involves a United States statute requiring venue in the United States." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 (9th Cir. 2001).  "A forum non conveniens determination is committed to the sound discretion of the district court." *Id.* at 1143 (citation omitted).

3

## DISCUSSION

The instant motion is a dispute about where this case belongs. MS Corporation argues that it belongs in Libyan courts because Plaintiff entered into an employment contract with MS Libya, a purportedly separate legal entity; the employment contract contained a choice of law provision mandating application of Libyan labor law to any employment dispute; Libyan law would deem all disputes arising therefrom to be related to the contract; and Libya is the more convenient forum for adjudication of the case. Plaintiff argues that while he entered into the employment contract with MS Libya, breach of contract is a small part of his claim. The gravamen of his case is against MS Corporation directly – because it controlled MS Libya – for allegedly violating federal and state laws prohibiting discrimination and for failing to accommodate Plaintiff's PTSD, all of which allegedly occurred after he returned to the United States. Thus, Plaintiff argues, the case belongs in federal district court in the Northern District of California, where he resides.

In order for the Court to grant MS Corporation's motion to dismiss for forum non conveniens, MS Corporation must show that the Northern District forum results in "oppressiveness and vexation . . . out of all proportion" to the Plaintiff's convenience. *Piper*, 454 U.S. at 241. Plaintiff's choice of forum is entitled to deference. *Id.* at 255. For the reasons discussed below, MS Corporation has failed to meet its burden.

### I. Libya as an Adequate Alternative Forum

An alternative forum is deemed adequate if: (1) the defendant is amenable to process there and (2) the other jurisdiction offers a satisfactory remedy. *Carijano*, 643 F.3d at 1225 (citing *Piper*, 454 U.S. at 254 n. 22). MS Corporation satisfies the first requirement because it offered to accept process to appear in a Libyan proceeding commenced by Plaintiff as a condition of dismissal.[1] Opp'n at 10 (Docket No. 12.) This "voluntary submission to service

---

[1] MS Corporation does not concede that it is a proper defendant to this action because it contends that it never employed Plaintiff.

4

1 of process" suffices to meet the first requirement for establishing Libya as an adequate
2 alternative forum. *Carijano*, 643 F.3d at 1225 (citation omitted).

3 Second, Libya appears to offer a satisfactory remedy. "A 'dismissal on grounds of
4 forum non conveniens may be granted even though the law applicable in the alternative
5 forum is less favorable to the plaintiff's chance of recovery,' but an alternate forum offering
6 a 'clearly unsatisfactory' remedy is inadequate." *Id.* MS Corporation submitted two
7 declarations from Libyan attorney Khalid Aljazwi. *See* March 26, 2013 Aljazwi Decl.
8 (Docket No. 15) & June 11, 2013 Aljazwi Decl. (Docket No. 35-2). Aljazwi averred that,
9 notwithstanding the Libyan revolution in February 2011, the Libyan judicial system is
10 "stable" and is a "fully functional, independent judicial system operating according to the
11 rule of law." June 11, 2013 Aljazwi Decl. ¶ 2. He opined that Plaintiff, as a non-resident
12 who entered into an employment contract in Libya, would have the ability to institute legal
13 proceedings in the Libyan courts, retain experienced counsel, and utilize the Libyan judicial
14 system's mechanisms for resolving labor and employment disputes. *Id.* Aljazwi ultimately
15 opined that Plaintiff's allegations in the Complaint would be cognizable, in all or in part,
16 under Labor Law No. 12 of 2010, and that he has "various avenues of redress" available to
17 him in Libya. March 26, 2013 Aljazwi Decl. ¶ 12. Plaintiff, in opposition, offered a
18 declaration from Libyan attorney Fituri Tabet, who opined that a Libyan court would deem
19 all of Plaintiff's claims, including those based on United States law, to arise out of his
20 employment contract and be barred by a one-year statute of limitation. Tabet Decl. ¶ 4
21 (Docket No. 44). MS Corporation, however, has agreed to waive any statute of limitation
22 defense should the case be dismissed on forum on conveniens grounds.[2] Supp. Opp'n at 1-2
23 (Docket No. 43). Given MS Corporation's agreement to waive a statute of limitation defense
24 and accept service of process, and the apparent presence of a satisfactory remedy in Libya,
25 the Court finds that Libya is an adequate alternative forum.

26

27 [2]It is unclear whether MS Corporation's waiver of any statute of limitation defense in a Libyan proceeding instituted by Plaintiff would waive such a defense on behalf of MS
28 Libya, which is purportedly a separate and distinct legal entity from MS Corporation and is not a party to this action.

5

**II. Balance of Private and Public Interest Factors**

The Court next examines factors relating to the private interests of the litigants and the public interest to determine whether the case should be heard in the alternative forum. Plaintiff's choice of forum is generally entitled to deference. *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1449 (9th Cir. 1990) ("[W]hile a U.S. citizen has no absolute right to sue in a U.S. court, great deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown."). This "strong presumption in favor of the plaintiff's choice of forum" may only be overcome "when the private and public interest factors clearly point towards trial in the alternative forum." *Piper*, 454 U.S. at 255. For the reasons discussed below, MS Corporation has failed to meet this burden.

**A. Private Interest Factors**

The factors relating to the private interests of the litigants include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Carijano*, 643 F.3d at 1229 (citing *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009)); *Lueck*, 236 F.3d at 1145. The Court finds that the private interest factors do not overcome Plaintiff's choice of forum for the reasons discussed below.

First, MS Corporation is a Washington corporation and Plaintiff resides in Redwood Shores, California, which is in the Northern District. It is unclear to the Court at this stage who are the potential witnesses in the case. Plaintiff contends that he believes pertinent testimony would be needed from his former supervisor, Clemens Kastner and "other NEPA personnel who placed" his former MS Libya colleagues in new positions after the Libyan revolution. June 5, 2013 Kedkad Decl. ¶ 6 (Docket No. 32). Plaintiff insists his seven former colleagues at MS Libya, who MS Corporation contends are located in the Middle East, are only "marginally relevant" to his claims. *Id.* Plaintiff further identified three

6

"relevant witnesses" who are "Microsoft personnel" located at offices in San Francisco and Mountain View, California, and Redmond, Washington. *Id. ¶ 5.* In contrast, MS Corporation contends the majority of potential witnesses identified by the parties reside in Libya or the Middle East. Elhasumi Decl. ¶ 7 & Tantawy Decl. ¶¶ 2-3 (Docket No. 35-3) (Plaintiff's former supervisors Messrs. Diab and Kastner are both located in the Middle East); Elhasumi Decl. ¶¶ 3, 6-7 (all of Plaintiff's former managers and coworkers are located in Libya or the Middle East). While some witnesses who may ultimately be called to testify reside in the Middle East, the Court finds that this concern does not outweigh Plaintiff's choice of forum in the Northern District, the district in which he resided during the alleged discriminatory conduct.

Second, the Northern District would be a more convenient forum for the Plaintiff, who contends he "would lack the financial resources to travel to Libya." June 5, 2013 Kedkad Decl. ¶ 8; September 25, 2013 Kedkad Decl. ¶ 3 (Docket No. 45) (averring that his family is dependent on his income of approximately $48,000 per year and opining that costs of and foregone earnings from prosecuting the case in Libya would be prohibitive). If the case were tried in the Northern District, Plaintiff and MS Corporation would presumably take depositions and attempt to produce witnesses at trial, some of whom might have to travel from Libya or the Middle East to the extent they voluntarily cooperate. *See* Elhasumi Decl. ¶ 13 (averring that travel from Tripoli, Libya to San Francisco, California can take as long as thirty-nine hours and airfare costs thousands of dollars). Because inconvenience would befall either party in either forum, this factor is neutral.

Third, Plaintiff contends that MS Corporation has ready access to or enjoys "substantial or complete" control of much of the documentary evidence in this case and can produce that evidence just as easily to this Court or to a Libyan court. Supp. Opp'n at 5. MS Corporation contends that MS Libya personnel and employment records, including documents relating to Plaintiff's employment with MS Libya would need to be translated from Arabic if this action were to proceed in the Northern District, resulting in additional delay, burden, and expense. On balance, the Court believes this factor is likely neutral.

7

Fourth, if potential witnesses located in Libya or the Middle East who are not under the corporate control of MS Corporation refuse to testify or sit for a deposition, these potential witnesses would be outside of the Court's compulsory process power. Fed. R. Civ. P. 45(b). It is unclear whether a Libyan court would have the power to compel unwilling witnesses or whether such witnesses, if residing in the Middle East, would voluntarily travel to Libya to participate in a Libyan judicial proceeding instituted by the Plaintiff. Accordingly, this factor is also neutral.

Fifth, as discussed above, given that Plaintiff and MS Corporation contend witnesses reside in both the Northern District and the Middle East, and the ultimate witness list is speculative at this point, the factor relating to the cost of bringing witnesses to trial is neutral.

Sixth, the Court does not see enforceability of judgment as a reason to grant dismissal for forum non conveniens. MS Corporation argues that there is no reason to believe MS Libya is either amenable to process in the Northern District or holds any assets in the United States, rendering a judgment against it here unenforceable. While potentially true, this is a separate inquiry from whether a judgment rendered against MS Corporation in this District would be enforceable, and Plaintiff's theory of the case appears to be that MS Corporation is ultimately liable. It is also unclear whether MS Corporation has any assets in Libya that would render it susceptible to judgment from a Libyan court, notwithstanding its conditional agreement to accept service of process should the case be dismissed on forum non conveniens grounds. Thus, this factor weighs in favor of the Northern District forum where a judgment against MS Corporation could likely be enforced.

Seventh, "practical problems" related to efficiency and expense exist regardless of where this case is tried so this factor is neutral. Although the Court recognizes the difficulty posed by the location of potential witnesses if some witnesses do in fact reside in the Middle East, the Court finds that MS Corporation has failed to meet its burden of showing that the balance of the seven private interest factors discussed above overcome Plaintiff's choice of forum in the Northern District.

8

### B. Public Interest Factors

The public interest factors include: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries: (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147 (citing *Piper*, 454 U.S. at 259-61). The Court finds that the public interest factors do not overcome Plaintiff's choice of forum for the following reasons.

First, the Northern District clearly has an interest in ensuring that its residents are afforded access to courts to prosecute claims for federal and state discrimination. Plaintiff alleges that MS Corporation failed to accommodate his alleged disability once Plaintiff returned to the United States while he resided in this District. While the Fituri and Aljazwi declarations present opinions that Libyan courts would interpret claims arising under United States law as arising from the 2011 Contract, it is less clear to the Court that Libya has a strong local interest in adjudicating Plaintiff's discrimination claims based on conduct that allegedly occurred in the United States. However, the Court recognizes that Libya also has a local interest in adjudicating disputes that arise out of labor and employment issues within its borders and ensuring that local corporations comply with applicable law. The 2011 Contract appears to have a choice of law provision that reinforces this conclusion. *See* 2011 Contract, art. 10 (providing the 2011 contract "is subject to" certain provisions of Libyan labor law). Because both the Northern District and Libya have local interests at stake in the litigation, this factor is neutral.

If litigated in the Northern District, the Court would have to learn – likely through translated documents and with the aid of Libyan attorney declarations – Libyan labor law to the extent it controlled the underlying agreement from which Plaintiff's discrimination claims arose given the choice of law provision in the 2011 Contract. However, a Libyan court would likely have to familiarize itself with the federal and California law raised by Plaintiff's other claims. On the other hand, the majority of Plaintiff's causes of action are based on federal and California substantive law, with which the Court is readily familiar. Resolving the majority of Plaintiff's federal and state discrimination claims imposes no

9

1 particular additional burden on the Court. While the Northern District is undoubtedly
2 congested, *see In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176,
3 1202 (C.D. Cal. 2004), the Court has no information regarding Libyan court congestion from
4 which to compare. *But see* Aljazwi Decl. ¶ 3 (averring that disputes in the Libyan judicial
5 system are heard and decided by a neutral decision-maker in a timely manner). These factors
6 are thus neutral to the Court's analysis.

7 Lastly, Plaintiff argues that the discriminatory conduct is related to this forum because
8 it occurred while Plaintiff resided here. *See* June 5, 2013 Kedkad Decl. ¶ 4 ("eleven claims
9 stated in my complaint in this case all relate to my interactions with NEPA personnel
10 following my departure from Libya in late February, 2011"). MS Corporation argues that
11 Plaintiff offers no evidence to support his assertion that MS Corporation "sufficiently
12 controlled his employment to constitute his employer, either jointly with Microsoft Libya or
13 as a single integrated entity that included Microsoft Libya." Reply at 11 (quoting Pl.'s Opp'n
14 at 2). MS Corporation further argues that the personnel identified by Plaintiff in relation to
15 those eleven claims were not employed by MS Corporation, and that there is no nexus
16 between his claims against the entity employing those actors and MS Corporation. Thus, MS
17 Corporation argues that should this action proceed in the Northern District and should MS
18 Corporation ultimately prevail on a dispositive motion, the Court would have expended
19 unnecessary resources to resolve a case that could have been adjudicated in Libyan courts.
20 However, the Court does not find that expenditure of such resources would impose costs so
21 great as to tip this factor in favor of dismissal to the Libyan forum for the mere sake of
22 convenience when Plaintiff has alleged substantive violations of federal law. On balance, the
23 public interest factors do not tip in favor of Libya as a more convenient forum.

24 Because the majority of private and public interests factors are neutral, and some tip in
25 favor of Plaintiff's choice of forum, MS Corporation has failed to meet its burden of showing
26 that Plaintiff's choice of forum in the Northern District results in "oppressiveness and
27 vexation . . . out of all proportion" to the Plaintiff's convenience such that Plaintiff's case
28 should be dismissed on the basis of forum non conveniens. *Carijano*, 643 F.3d at 1227

(quoting *Piper*, 454 U.S. at 241). The Court therefore DENIES MS Corporation's motion to dismiss for forum non conveniens.[3]

**CONCLUSION**

For the foregoing reasons, MS Corporation's motion to dismiss for forum non conveniens is DENIED.

**IT IS SO ORDERED.**

Dated: 11/04/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[3] The forum non conveniens doctrine is inapplicable to certain federal statutes which contain "special provisions mandating venue in the United States district courts." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699-700 (9th Cir. 1995) (citing *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1487 (9th Cir. 1987), *amended and modified on other grounds* by *Zipfel v. Halliburton Co.*, 861 F.2d 565, 570 (9th Cir. 1988)). "Because of this, a choice of law determination must be made before the district court dismisses an action under the forum non conveniens doctrine." *Id.* However, because the Court denies MS Corporation's motion to dismiss for forum non conveniens, the Court need not reach this choice of law analysis.

11